**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE ESCALA GROUP, INC. SECURITIES LITIGATION | **FILED ELECTRONICALLY** |
| | Master File No. 06-cv-3518 (AKH) |
| This Document Relates To:<br>   ALL ACTIONS | |

**DECLARATION OF JEFFREY P. CAMPISI IN SUPPORT OF LEAD PLAINTIFF'S**
**MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

KAPLAN FOX & KILSHEIMER LLP
Robert N. Kaplan
Donald R. Hall
Jeffrey P. Campisi
850 Third Avenue, 14th Floor
New York, New York 10022
Telephone:  (212) 687-1980
Facsimile:  (212) 687-7714

I, JEFFREY P. CAMPISI, declare the following under the penalty of perjury:

1.    I am a member in good standing of the bar of the State of New York and am admitted to practice before this Court.  Further, I am an associate at the law firm of Kaplan Fox & Kilsheimer LLP and I respectfully submit this Declaration in support of the Virginia Retirement System's motion for preliminary approval of settlement.

2.    Attached hereto as Exhibit 1 is a true and correct copy of the Affidavit of Charles E. Ferrara, Managing Senior Project Manager at Complete Claim Solutions, LLC.

Dated:  September 18, 2008

                              _____/s/ Jeffrey P. Campisi_____
                                   JEFFREY P. CAMPISI

- 1 -

# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE ESCALA GROUP, INC. SECURITIES LITIGATION | Master File No. 06-cv-3518(AKH) |
| This Document Relates To: Securities Cases Only | |

## AFFIDAVIT OF CHARLES E. FERRARA

**STATE OF NEW YORK**    )
                         ) ss:
**COUNTY OF SUFFOLK**    )

CHARLES E. FERRARA, being first duly sworn upon oath, states as follows:

1.      I am over 21 years of age and am not a party to this action. I have personal knowledge of the facts set forth herein and, if called as a witness, I could and would testify competently to the facts set forth in this Affidavit.

2.      I am a Managing Senior Project Administrator with Complete Claim Solutions, LLC ("CCS").  As such, I am responsible for overseeing CCS' securities class action practice, including the dissemination of class notices, claims processing, and the distribution of settlement funds.

### EXPERIENCE

3.      Founded in 1998, CCS is an administration firm specializing in securities, insurance, ERISA, consumer, and antitrust class action settlements.  In 2006, CCS was acquired by SOURCECORP Inc. ("SOURCECORP").  SOURCECORP is a provider of business process outsourcing solutions to clients nationwide.[1]  Headquartered in Dallas, Texas, SOURCECORP serves clients in information-intensive industries such as healthcare, legal, financial services and government.  For more information, visit the SOURCECORP website at www.srcp.com.

---

[1] Other companies in the SOURCECORP family of companies include Rust Consulting, Inc. ("Rust Consulting") and Kinsella/Novak Communications, LLC ("KNC").  Rust Consulting is a national claims administrator with 30 years experience that has performed over 1,500 cases.  KNC is an advertising firm specializing in media-based notification programs to reach unidentified class members.  Combined, CCS, Rust Consulting and KNC have more than three decades of experience in developing and administering large and complex class action settlement notice and claims programs.

4.      CCS is insured up to $10 million in E&O coverage with at least a $20 million umbrella coverage through our parent company SOURCECORP.

5.      Our internal data security practices meet or exceed today's exacting industry standards. We are accredited under the Federal Information Security Management Act and undergo an annual SAS70 Type II audit of our data security controls designed to demonstrate our substantial level of readiness under the regulatory statutes most important to our clients, including Sarbanes-Oxley Act, the Gramm-Leach-Bliley Act, and the Health Insurance Portability and Accountability Act. Our enterprise-class data security measures are founded on standard business processes including a vigorous employee screening program, ongoing employee security training and a hardened production data center hosted at a Tier 1 network carrier, all designed for ensuring data integrity and security.

6.      CCS' engagements have run from less than 100 to over 4 million class members. A partial list of CCS' class action administration experience is annexed hereto as Exhibit A.

7.      Some of the notable securities litigation settlements administered by CCS with large class sizes, unique notice campaigns, or complex computing requirements include:

> *SEC Fannie Mae Settlement*
  More than 1.5 million Notice Packets mailed; more than 125,000 claims received.

> *In re HealthSouth Corporation Securities Litigation*
  More than 250,000 Notice Packets mailed.

> *In re: Waste Management, Inc. Securities Litigation*
  More than 150,000 Notices Packets mailed; processed more than 55,000 claims.

> *In re Motorola Securities Inc.*
  Mailed more than 1.3 million Notice Packets mailed.

## CLASS NOTIFICATION IN SECURITIES LITIGATION

8.      Pursuant to the Settlement Agreement and Proposed Order Preliminarily Approving Settlement, CCS is responsible for: 1) disseminating the Notice of Pendency and Proposed Settlement of Class Action and the Proof of Claim and Release (the "Notice Packet") to potential Class Members in this action; 2) publication of the Summary Notice in the *Wall Street Journal* (per the proposed order); 3) assisting Class Members with questions regarding the proposed settlement and the submission of claims; 4) receiving and processing claims submitted regarding the settlement fund; 5) corresponding with Class Members submitting deficient claims; 6) reporting to Counsel and the Court; and 7) calculating and distributing

settlement funds to approved claimants.

Providing direct notice to Class Members in this matter requires special consideration. As is typical for publicly traded companies, the vast majority of shareholders own securities in "street name," that is registered to the brokerage house or financial institution rather than directly to the investor. Consequently, the identities of these class members are known only to the brokers and other nominees who purchase and/or hold securities on their behalf. To provide targeted notice to these individuals, CCS maintains a proprietary database developed and maintained by CCS, of more than 2,150 brokers, nominees, and other financial institutions, whom we will solicit to identify Class members. The database contains current addresses for participant members of The Depository Trust Co. (Cede & Co.) and other financial institutions identified through North American Securities Dealers including entities who typically file nominee claims for the benefit of Class members.

9.      In order to ensure widest possible distribution of the Settlement Notice, CCS will, in consultation with Lead Counsel, conduct a nominee outreach campaign to ensure that Nominees receive the Notice Package. As directed in the Settlement Notice, brokers and other Nominees are required to either: 1) provide CCS with the name and last known address of each person or entity for whom or which purchased a relevant security; or, 2) mail the Notice Package directly to the beneficial owners of relevant securities (with free copies provided to the Nominee upon request).

10.     To provide notice to Class Members whose mailing addresses are unavailable, CCS will, in consultation with Lead Counsel, initiate a published notice campaign designed to distribute the Summary Notice as widely as possible and in the most cost effective manner.

11.     The notice methodology described above is consistent with processes historically employed to provide Notice to owners of publically traded securities in class actions. Variants of this methodology (changing to reflect new technologies) have been relied upon by CCS in the administration of securities litigation settlements for ten years.

## SETTLEMENT SUPPORT

12.     In coordination with Lead Counsel, CCS will design and implement a Website dedicated to supporting the notice and administration for this Settlement. The "Home Page" will specifically denote who may be entitled to receive a payment, the relevant dates of the

class period and a brief summary of the class action, and will contain links to the Notice, Proof of Claim, and Court Documents (Settlement Agreement, Order, etc.), Frequently Asked Questions containing a list of common questions and answers, and a Contact Information section, which provides detailed contact information for CCS.

13.    Working with Lead Counsel, CCS will also establish and maintain a telephone Call Center for Class Members to call and obtain information about the Settlement, a Notice Packet, and/or assistance from a live operator. Once a caller connects to the Call Center, he or she will hear an Interactive Voice Response system ("IVR"). The IVR will provide detailed information to callers about the Settlement, assistance with the claim filing process, information about filing an objection or exclusion to the Settlement, and allow callers to request a Notice Packet by mail. Additionally, the IVR will contain an option to speak with a live operator. The settlement support line will be staffed by Call Center Representatives from 9 a.m. to 5 p.m. Eastern Standard Time, Monday through Friday, excluding Federal holidays.

14.    These Class Member support mechanisms are consistent with historic methods used to assist Class Members with information regarding class action settlements. Variants of this process (changing to reflect new technologies) have been relied upon by CCS in the administration of securities litigation settlements.

## CLAIMS PROCESSING PROCEDURES

15.    CCS will perform the following tasks associated with general administration, claims processing and calculating claims as outlined below.

> ➢    Open a Post Office Box exclusively for receipt and processing of undeliverable mail, correspondence and claims in the Settlement;
> ➢    Build a database and configure our proprietary system, ISIS (Integrated Settlement Information System) to manage receipt of claims and telephone inquiries from potential Class members;
> ➢    Upload and scrub shareholder data received from counsel, the company, transfer agent, etc. to be used in mailing of Notice Packets (remove duplicates);
> ➢    Setup hotline and provide toll-free assistance to Class members;
> ➢    Submit names and addresses through National Change of Address ("NCOA") database to obtain current addresses and applicable U.S. Postal discounts;
> ➢    Coordinate publication of Summary Notice in approved publications;
> ➢    Print and mail a Notice Packet to brokers, nominees and other financial institutions in our broker database, advising them of the Settlement and requesting their assistance in identifying Class members;

- ➤ Print, address and mail Notice Packets to Class members using data provided by the company, transfer agents and other sources;
- ➤ Ship in "bulk" Notice Packets to brokers, banks and other nominees as requested;
- ➤ Open, sort all mail and batch incoming Proofs of Claim for processing and other correspondence;
- ➤ Satisfy requests for additional Notice Packets from brokers or other nominees;
- ➤ Print and mail Notice Packets in response to Summary Notice publications, as well as re-mail to Class members returned as undeliverable/change of address;
- ➤ Prepare affidavit for the Court regarding the Notice mailing and Summary Notice publications;
- ➤ Image/scan incoming Proofs of Claim for quick, efficient processing;
- ➤ Respond to all general correspondence from Class members and/or forward such inquiries to Counsel, as needed;
- ➤ Receive and tabulate Requests for Exclusion, if required;
- ➤ Enter data, validate, and calculate recognized claim amounts for each claim filed by Class members based on the guidelines in the plan of allocation;
- ➤ Determine eligibility, (i.e., did Class members purchase Escala Group, Inc. ("Escala") securities within Class Period, not an excluded party, etc.);
- ➤ Review documentation and forms for accuracy and reasonableness, and eliminate defendants and other excluded parties;
- ➤ Identify and resolve duplicative claim filings;
- ➤ Process claimant responses and send deficiency and/or rejection letters, as needed; and
- ➤ Send follow-up letters when required.

16.     Because the identities and investment activities of class members are not known, Class Members are required under the terms of the proposed Settlement Agreement to submit a Proof of Claim form in order to obtain their share of the Net Settlement Fund. This data is relied upon by CCS to calculate Recognized Loss amounts for each claimant in accordance with the Plan of Allocation.

17.     In order to protect the integrity of the settlement administration process and ensure that all Class Members submitting valid claims receive the full amount that they are entitled to under the Settlement Agreement, CCS proposes to use the following methodology to process the claims and correspondence submitted in this matter: (a) envelopes received from the Post Office Box will be opened and sorted into correspondence, such as requests for Notice Packets, and actual Proof of Claim forms; (b) the claim forms will be opened and all documentation submitted with a claim form will be filed with that claim form, and for quality control purposes, each claim will be sequentially stamped upon receipt with a unique "Claim Number." Claims

will be grouped in batches of fifty (50), each claim will be grouped in the order it is processed by CCS's mailroom staff, and each batch of claims will be numbered sequentially; (c) the information from each claim form, including the name, address, tax payer I.D. or Social Security Number of the claimant, and the purchase and sales transactions listed on the claim will then be entered and/or scanned into a segregated database; (d) the documentation provided in support of each claim by the claimant will then be reviewed to ascertain whether the claimant had in fact purchased the common stock of Escala during the Class Period; (f) claims will then be reviewed for accuracy and to ensure that they were not submitted by or on behalf of excluded parties.

18.    In the event that a submitted claim lacks required information or documentation to substantiate the Class Member's transactions during the Class Period, CCS will send a letter to the claimant advising him/her/it of the deficiency and requesting the submission of the appropriate documentary evidence or correction of the defect.    This letter will advise Claimants that unless the indicated deficiency is corrected within twenty days, his/her/its claim would be accepted only to the extent of the documentation supplied.  If appropriate, Deficiency Letters will advise that the claim will be entirely rejected if the Claimant does not supply the required documentation or information.

19.    If a Claimants' response does not cure the deficiency, or if a Claimant does not respond to the Deficiency Letter, a Final Determination Letter (the "Final Determination") may be sent to the Claimant, advising him/her/it that the claim was still (partially or wholly) deficient and what is needed to cure the remaining deficiencies.  In addition, the Final Determination will advise Claimant that unless all remaining deficiencies are cured within twenty (20) days, the Claimant's claim would be rejected.  The Final Determination will also advise the Claimant of his/her/its right to request this Court's review of our final determination regarding the claim.

20.    Claimants whose Claim Forms or documentation demonstrated that the Claimant is ineligible to participate in the settlement (for example, where the documentation did not demonstrate that the Claimant had purchased Escala common stock during the Class Period) will be sent a Non-Eligibility Letter. The Non-Eligibility Letter will advise the Claimant of his/her/its right to request this Court's review of our administrative determination rejecting the claim.

## QUALITY ASSURANCE

21.    CCS quality assurance standards are high.  We have personally audited "troubled" settlements (administered by four competitor firms) in order to ensure the accurate calculation of claims and distribution of funds for each of these Settlements.  This auditing process consisted of (a) testing computer programs and calculations, (b) reviewing the implementation of plans of allocation, operational policies and source data, and (c) providing value-added suggestions to the previous Settlement Administrators.

Our quality assurance processes takes in account:

➢    Responding to Class members timely;

➢    Training and oversight of live operators to provide accurate information to Class members;

➢    Ensuring accurate data capture of claimant information from claim forms;

➢    Understanding and evaluating the data received on the claims and opt-out forms;

➢    Running exception reports to identify inconsistencies in data provided by Class members, including dates, prices, suppressed sales or holdings, etc.;

➢    Understanding documentation requirements and surrogate procedures;

➢    Determining who is filing the claim or opt-out (Class member, nominees, attorneys, etc.); and

➢    Ensuring there is no "overlapping" or duplicative data between claims (e.g. nominee files a claim, and duplicative data, in whole or part, is filed by the Class member).

22.    In the end, each claimant who filed a claim will be sent either a check or a deficiency/ineligibility letter.  This is one of our standard audits; CCS understands the importance of ensuring that each claimant who has filed a claim is notified either through distribution payment or letter, and was given the appropriate opportunity to perfect the inconsistent condition. The claims processing methodology described above is consistent with processes historically employed to administer securities litigation settlements, protect the rights of Class Members, and to accurately distribute settlement funds.

## DISTRIBUTION AND POST-DISTRIBUTION SERVICES

23.    As part of the distribution and post-distribution phases, CCS will perform the following functions:

➢    Compute awards to eligible Class members based upon the plan of allocation formula approved by the Court;

➢    Prepare pre-check lists;

➢    Print and mail checks;

> ➤    Answer calculation inquiries from claimants;

> ➤    Perform monthly bank reconciliations and associated accounting functions including stop payments and reissues for lost/stolen checks;

> ➤    Deliver a final accounting report to Counsel; and

> ➤    Provide reconcilement services and respond to claimant inquires for a period up to 18 months after distribution.

24.    CCS is experienced in overseeing escrow account funds, including choosing prudent investment alternatives, coordinating tax related investment issues, and ensuring the appropriate controls are in place to protect the funds along with providing detailed reporting on the fund activities to the parties.    Over the past year we have had responsibility for over 100 escrow accounts and billions of dollars in these funds, such as Service Corp. International, Attorney Generals v. Ameriquest Mortgage and CHO v. Seagate.

25.    CCS works in association with Damasco & Associates, LLP, San Francisco, California, in preparing and filing tax returns on behalf of the Settlement Fund.    CCS maintains a separate accounting database to record interest, expenses, quarterly estimate taxes, issuance of 1099s, etc. Damasco & Associates assists CCS in this process and oversees tax filings with the IRS. Throughout the scope of this administration, we will correspond with the IRS together on issues related to the Settlement Fund and, if needed, will provide representation at meetings

## SECURITY AND CONTROLS

26.    Since CCS' clients are drawn from all sectors of the United States economy governmental agencies, financial institutions, and insurance companies, CCS has chosen the "high water mark" of the requirements from different regulatory regimes to meet the diverse needs of these clients.

## FEES AND EXPENSES

27.    In response to a Request for Proposal, CCS submitted a proposal that was accepted by Lead Counsel and the proposed fees fall into two categories:

(i)    Activities Billed at Hourly Rates: This fee category includes activities that are well defined in nature and scope, such as call center configuration, data entry, web site design and hosting, printing (correspondence and checks), call center usage, request transcription, mail receipt and processing, processing and re-mailing address corrections, document imaging, processing of claims, and tax return filing.    This fee

category also includes activities that are not well defined in nature and scope, such as programming time associated with converting electronic schedules provided by brokerage houses, project management, and quality assurance.

(ii)     Out-of-Pocket Expenses: This fee category includes out of pocket expenses associated with the administration of the settlement, and includes publication of the Summary Notice, printing of the Notice Packet, postage, and research fees associated with financial institutions identifying class members. Financial institution research fees, a key component in controlling costs, will be aggressively negotiated to minimize the expense of identifying class members.

28.     A copy of the proposal is attached as Exhibit B.

Charles E. Ferrara
Managing Senior Project Manager

SWORN to before me this

18th day of September, 2008

Notary Public

JESSICA COLANGELO
NOTARY PUBLIC, State of New York
Registration No. 01CO5087310
Qualified in Nassau County
Commission Expires: November 3, 2009

# EXHIBIT A

# Exhibit A - Listing of Settlements

The following is a partial list of the CCS cases:

AIMCO Class Action Settlement
Airborne/DHL Settlement
Alias Research, Inc. Securities Litigation
American Franklin Life Insurance Company Litigation
AndrogenX Consumer Litigation
Arden Realty Inc. Shareholder Litigation
Associates Litigation
AstraZeneca AWP Settlement
AT&T Pension Class Action
Augmentin® Antitrust Litigation
Aviation Distributors, Inc.
AWP Litigation
Banana Class Action
Bandag, Inc. Securities Settlement
Bankers Life Ins. Co.of NY Consolidated Litigation
BAR/BRI Class Action
Bardmoor Class Action Settlement
Barner Class Action Settlement
Baycol Third-Party Payor Litigation
BellSouth Consumer Litigation
Berkshire Realty Litigation
Biovail Securities Litigation Settlement
Braman Class Action Settlement
Broward County Strip Search Settlement
BuSpar® Third-Party Payer Antitrust Litigation
Cain v. JPT Automotive Class Action
Campbell Soup Company Securities Litigation
Cardizem CD Antitrust Litigation
Chicago Bridge & Iron Co. Securities Litigation
Chillag v. American International Settlement
CHT, Inc. Class Action
Cipro Antitrust Litigation
Citrus Canker Compensation Class Action
CNL Hotels and Resorts, Inc. Securities
Columbian Mutual Life Insurance Settlement
Concord Management Class Action Settlement
Conrad v. Perales Settlement
Countrywide Shareholders Litigation
Craig Consumer Electronics, Inc.
DRAM Antitrust Litigation
Eaton Vance Securities Litigation
Erie Family Life Insurance Litigation
First Central Financial Corporation Securities
First DataBank/Medi-Span Settlement
Florida Rock Securities Litigation
Freeport McMoRan Sulphur, Inc. Shareholder Litigaton
FTD.com Securities Litigation
Gallagher Insurance Brokerage Antitrust Litigation
Garment Capitol Associates Litigation
Gasche v. Asworth Corporation
Gateway Insurance Company Litigation
Grabarnick SEC Settlement Fund
Great American Insurance Litigation
Great Western Bank Securities Litigation

GSK AWP Litigation
Harrah's Entertainment Settlement
Hartford Insurance Texas Settlement
Hartford PIP Litigation
HealthSouth Corporation Securities Litigation
HPL/Laminates Class Action Litigation
Hytrin (Terazosin Hydrochloride) Antitrust Litigation
Impact Nutrition Litigation
IMT Residential Class Action Settlement
In re Gables Residential Trust
In re Lincoln Management Company
In re Seitel, Inc. Securities Litigation
In re Targets Securities Litigaton
Insurance Brokerage Antitrust Litigation - Zurich
InterMune Securities Litigation
Interprise Technology Partners, L.P. Settlement
Investments Limited Class Action Settlement
JC Nichols Securities Litigation
JCC Holding Company Shareholders Litigation
Jordan Publishing Litigation
KeyStone / SeniorBlue Securities Litigation
Landers v. Exchange Settlement
Litton Industries / Northrup Securities Litigation
Lupron® Marketing and Sales Practices Litigation
Marsh Insurance Brokerage Antitrust Litigation
Medco ERISA Settlement
Mercury Interactive Settlement
Metals USA, Inc. Shareholders Litigation
Miami Automotive Retail Settlement
Morgan Stanley Securities Litigation
Motorola Securities Litigation
Mylan Laboratories (Lorazepam and Chlorzaepate)
Nantucket Island Associates
Napp Technologies Inc. Litigation
Natural Gas Litigation (NYMEX)
Norland Medical Systems
North Carolina Mutual Life Insurance Company
Norvir Anti-Trust Litigation
Norwegian Cruise Line Settlement
Nuko Information Systems, Inc. Securities Litigation
Nutraceutics Litigation
Ocwen Financial Corporation
Oil Changer Partnership Litigation
Olen Residential Class Action
Ong. v. Sears Securities Litigation
Orbital Sciences Corp. Securities Litigation
OSB Antitrust Litigation
Ovcon 35 TPP Settlement
Page Collins v PBGC
PaineWebber Short-Term US Income Fund Litigation
Park BAR/BRI Class Action
PartsBase.com Securities Litigation
Paxil® Class Action Settlement
Pennsylvannia State Correction Officers Litigation

# Exhibit A - Listing of Settlements

Phoenix Leasing Limited
Platinol® Direct Purchaser Settlement
Premarin Class Action
Premier Cruise Lines, Ltd. Litigation
PriceSmart Securities Litigation
Publication Paper Antitrust Litigation
Qiao Xing Securities Settlement
Real Estate Associates Limited Partnership Litigation
Realogy Corp. Shareholder Litigation
Red Light Camera Litigation
Relafen Antitrust Litigation
Remeron Antitrust Settlement
Riscorp, Inc. Securities Litigation
RMS Titanic Litigation
SafeNet, Inc. Shareholders Litigation
Experimental Applied Sciences, Inc.
('EAS') Litigation
Sears Roebuck Consumer Litigation
SEC Nvidia Investor Fund
Security National Insurance
Serostim Litigation
Service Corporation International
Shared Medical Systems Settlement
SmartForce (SkillSoft) PLC Securities Litigation
Solvay America Pension Class Action
Spear & Jackson/Celebrity
Sprint Securities Litigation Settlement
Statin Drug States Settlement

T.D. Waterhouse Consumer Litigation
Taq Antitrust Litigation
Taxol Direct Purchaser
Taxol Third-Party Payor
Tele-Communications Inc. Shareholders Litigation
Transaction Systems Architects, Inc. Class Action
Transamerica Partnership Litigation
Unity Life Insurance Litigation
Urethane-Polyester Polyols
Urethane-Polyether Polyols
US Auto Parts Network Securities Litigation
USAA Litigation
Valet Parking Systems, Inc.
Van Kampen Securities Litigation
Vitamin Shoppe Andro Settlement
Walmart Stores / Chase Manhattan Bank Consumer Litigation
Warfarin Sodium Antitrust Litigation (Coumadin)
Washington Mutual Settlement
Waste Management Inc. of Florida
Weider Andro Settlement
Wilmington Trust Company Securities Litigation
Xethanol Corporation Securities Litigation
Zale Securities Litigation Settlement
Z-Methoxy Litigation Settlement
Zurich Settlement

# EXHIBIT B



**Escala Settlement Administration**
**Settlement Administration Estimate**
**March 20, 2008**

Complete Claim Solutions, LLC

| | | Estimated Quantity | Class Percentages |
|---|---|---|---|
| **Key Assumptions** | | | |
| Estimated Number of Damaged Claimants | | 21,000 | 100% |
| Estimated Claims Filed | | 3,150 | 15% |
| Notice and Proof of Claim: | | | |
|    Initial Mailed Notice | | 2,310 | 11% |
|    Subsequent Mailing: | | | |
|       Broker/dealer request - labels | | 7,350 | 35% |
|       Broker/dealer request - bulk | | 2,310 | 11% |
|       Broker/dealer request - electronic files | | 8,400 | 40% |
|       Individual from Phone Support | | 630 | 3% |
| | | 18,690 | 89% |
| Total Notices Mailed | | 21,000 | 100% |
|    Undeliverable Process for Initial Mail Notice: | | | |
|       Forwarded Notices | | 204 | 1% |
|       Undeliverable Notices | | 2,037 | 10% |
|       Re-mailed Undeliverable Notices | | 1,630 | 80% |
| Telephone Support: | | | |
|    Number of Telephone Contacts | | 525 | 2.5% |
|    Number of Calls in IVR System | | 525 | 100.0% |
|    Number Reaching Customer Service Representative | | 315 | 60% |
|    Connect Minutes per Call - IVR | | 1.5 | |
|    Connect Minutes per Call - CSRs | | 3.0 | |
| Proof of Claims: | | | |
|    Hard Copy Claims | 50% | 1,575 | |
|    Electronic Claims | 50% | 1,575 | |
|    Claims Filed | | 3,150 | 15% |
|    Deficient/Ineligible Letters | 20% | 630 | |
|    Responses to Deficient/Ineligible Letters | 60% | 378 | |
| Payments | | 2,898 | 13.8% |



**Escala Settlement Administration**
**Settlement Administration Estimate**
**March 20, 2008**

Complete Claim Solutions LLC

| Administrative Task | Estimated Quantity | | Per Unit | Task Amount | Total |
|---|---|---|---|---|---|
| **Project Set-Up** | | | | | |
| Initial Set Up | | | | $ 5,000 | |
| *Coordinate call center (toll-free number); author FAQs & phone script; procedure development, Notice Packet design & layout; coordinate web-based content & admin support.* | | | | | $ 5,000 |
| **Database Development** | | | | | |
| Receive and Process Database & Set up ISIS | | | | 1,000 | |
| Load Broker Notice Packet Requests (est. 30 loads) | 30 | Hours @ | $ 80.000 | 2,400 | |
| QA Broker Notice Packet Requests (est. 30 loads) | 20 | Hours @ | 75.000 | 1,500 | 4,900 |
| *Data must be provided in a complete, consistent, standardized electronic format. CCS's standard format is ASCII fixed width complete with field layout. Other formats may be accepted at CCS's discretion. Resources used to enhance or further develop non-standardized data will be billed on a time and materials basis according to the rates found in the Discounted Hourly Rates section below.* | | | | | |
| *Data Storage will be waived for the first twelve months of the project. Thereafter, it will be billed on a monthly basis.* | | | | | |
| **Notification** | | | | | |
| Mailed Notice: | | | | | |
| Print and Mail Notice Package | 2,310 | Notices @ | 0.28 | 647 | |
| Postage - One Ounce First Class Rate (at cost) | 2,310 | Notices @ | 0.41 | 947 | 1,594 |
| *CASS - Coding Accuracy Support System; NCOA - National Change of Address; LACS - Locatable Address Conversion System. Print and Mail per unit price are estimated. Actual prices will be provided after form is finalized prior to mailing. The print and mail notice package assumes a 12-page notice and 4-page claim form self-mailer booklet.* | | | | | |
| Subsequent Mailings: | | | | | |
| Individual Notice Requests from Telephone Support | 630 | Requests @ | 1.00 | 630 | |
| Print Notice Package for Broker and Individual Requests | 18,690 | Notices @ | 0.28 | 5,233 | |
| Mail Fulfillment for Broker (non bulk) and Individual Requests | 16,380 | Notices @ | 0.25 | 4,095 | |
| Mail Fulfillment for Broker Bulk Requests | 2,310 | Notices @ | 0.08 | 185 | |
| Postage - One Ounce First Class Rate | 18,690 | Notices @ | 0.41 | 7,663 | |
| Broker/dealer Reimbursements | | | | Actual | 17,806 |
| *Subsequent mailings include broker include 1) bulk mailings of notices for the third party to mail; 2) mail labels are received for fulfillment; and 3) mail files are received for fulfillment.* | | | | | |
| **Undeliverable and Forward Notices** | | | | | |
| Receive and Update Database | 2,241 | Notices @ | 0.50 | 1,120 | |
| Address Trace for Undeliverables | 2,037 | Traces @ | 0.25 | 509 | |
| Print Notice Package for Undeliverable and Forward Notices | 1,833 | Notices @ | 0.28 | 513 | |
| Re-Mail Individual Notice | 1,833 | Notices @ | 0.50 | 917 | |
| Postage - One Ounce First Class Rate (at cost) | 1,833 | Notices @ | 0.41 | 752 | 3,811 |
| **Published Notice** | | | | | |
| As required | | | | | TBD |
| **Web Site** | | | | | |
| Set-up Static Webpage and Load Documents | | | | 750 | |
| Monthly Maintenance | 12 | Months @ | 50 | 600 | 1,350 |
| *The website includes general content along with viewable and downloadable forms.* | | | | | |



**Escala Settlement Administration**
**Settlement Administration Estimate**
**March 20, 2008**

Complete Claim Solutions, Inc.

| Administrative Task | Estimated Quantity | | Per Unit | Task Amount | Total |
|---|---|---|---|---|---|
| **Telephone Support** | | | | | |
| Set-up | | | | 1,000 | |
| Staff Training (2 CSRs for 4 hours) | 8 | Hours @ | 45 | 360 | |
| Interactive Voice Response @ 1.5 minutes per call | 525 | Calls @ | 0.32 | 168 | |
| Live Telephone Support @ 3 minutes per call | 315 | Calls @ | 2.25 | 709 | |
| 800# Charges | 1,733 | Minutes @ | 0.12 | 208 | 2,445 |

*The above amounts are estimates based on assumptions noted on Page 1. Telephone Support fees are estimated and will be billed on actual time expended based on the rates found in the Discounted Hourly Rates section below. . Actual amounts incurred will be billed on a monthly basis.*

| **Claims Processing** | | | | | |
|---|---|---|---|---|---|
| Proof of Claim: | | | | | |
| Receipt of Hard Copy Claims | 1,575 | Claims @ | 0.50 | 788 | |
| Image / Archive - Average of 6 Pages per Claim | 9,450 | Pages @ | 0.12 | 1,134 | |
| Data Capture - Average 4 Transactions per Claim | 1,575 | Claims @ | 1.00 | 1,575 | |
| Review and Validate Documentation/Set Message Codes | 1,575 | Claims @ | 1.50 | 2,363 | |
| | | | | | |
| Electronic Files: | | | | | |
| Load Electronic Claims | 1,575 | Claims @ | 0.50 | 788 | |
| QA Electronic Claims | 1,575 | Claims @ | 1.25 | 1,969 | |
| Process Deficient & Ineligible Claims: | | | | | |
| Sort, QC and Review Deficient and Ineligible Claims | 630 | Claims @ | 1.50 | 945 | |
| Generate Cure Letter and Mail | 630 | Letters @ | 0.75 | 473 | |
| Postage - One Ounce First Class Rate (at cost) | 630 | Letters @ | 0.41 | 258 | |
| Receive Response, Process and Update Database | 378 | Responses @ | 2.00 | 756 | |
| All Claims: | | | | | |
| Quality Assurance Review | 30 | Hours @ | 100 | 3,000 | |
| Plan of Allocation Programming | 15 | Hours @ | 150 | 2,250 | |
| Quality Assurance Calculation Testing | 15 | Hours @ | 125 | 1,875 | |
| Other Administration Activity Requested by Client | | | TBD | | 18,172 |

*Receipt and Process claims includes open, date stamp, label and data capture a proof of claim with up to 200 characters. Exception reporting includes the process of accepting or rejecting claims, handling disputes and curing deficient claims. Electronic files, exception reporting and deficient processing will be billed on an hourly basis according to the rates found in the Discounted Hourly Rates section below. .*



**Escala Settlement Administration**
**Settlement Administration Estimate**
**March 20, 2008**

| Administrative Task | Estimated Quantity | | Per Unit | Task Amount | Total |
|---|---|---|---|---|---|
| **Fund Distribution** | | | | | |
| Print and Mail Payments | 2,898 | Payments @ | 0.65 | 1,884 | |
| Postage - One Ounce First Class Rate (at cost) | 2,898 | Payments @ | 0.41 | 1,188 | |
| Reissues | 145 | Payments @ | 1.50 | 217 | |
| Postage - One Ounce First Class Rate (at cost) | 145 | Payments @ | 0.41 | 59 | 3,349 |

*Print and Mail per unit price assumes an 8.5x11 payment form inserted into a window envelope. Reissues will be billed on actual time expended based on our Current Standard Hourly Rates. The rates listed above are a blended estimate of the rates Discounted Hourly Rates listed below.*

| | | | | | |
|---|---|---|---|---|---|
| **Project Management** | | | | | |
| Senior Management Oversight | 1 | Hours @ | 275 | 275 | |
| Project Management | 20 | Hours @ | 150 | 3,000 | |
| Technical Consulting | 10 | Hours @ | 175 | 1,750 | |
| Quality Assurance | 15 | Hours @ | 125 | 1,875 | |
| Staff (blended rate) | 25 | Hours @ | 70 | 1,750 | 8,650 |

*Project Management fees are estimated and will be billed on actual time expended based on our Discounted Hourly Rates. The rates listed above are a blended estimate of the rates listed below.*

| | | | | | |
|---|---|---|---|---|---|
| **Other Charges and Out-of-pocket Costs** | | | | | Actual |

*Includes overnight shipments, postage, labels, travel, long distance, brokerage reimbursements and other miscellaneous charges and expenses.*

| | | |
|---|---|---|
| **Total Claims Administration Estimate** | | $  67,076 |

| | |
|---|---|
| **Total Fees Estimate** | $46,950.35 |
| **Total Expenses Estimate** | $20,126.02 |
| **Total Claims Administration Estimate** | $67,076.37 |

**Discounted Hourly Rates (subject to change)**

| | | Rates |
|---|---|---|
| Management/Oversight | $ | 275 |
| Set-up/Training | $ | 140-160 |
| Senior    IT/Programming    &    Database | $ | 180-275 |
| IT/Data Loads & Letters | $ | 110-140 |
| Quality Assurance Managers | $ | 150-235 |
| Quality Assurance | $ | 110-140 |
| Controller/Finance | $ | 140 |
| Senior Project Management | $ | 162 |
| Project Management | $ | 110-140 |
| Telephone/Call Center Operators (various) | $ | 60-100 |
| Data    Entry/Processing/Scanning/Mail | $ | 60-80 |
| Administrative Staff | $ | 60-80 |

*All fees are estimates based on the information provided. Actual fees will be billed on a time and materials basis according to the Discounted Hourly Rates.*

**Optional Services**

| **Oversee Escrow Account Funds** | | | | | |
|---|---|---|---|---|---|
| Annual Fee - QSF Income Tax Reporting | 1 | Years @ | 1,875 | 1,875 | |
| Financial and Administration (per year) | 24 | Hours @ | 110 | 2,640 | 4,515 |

*Includes choosing prudent investment alternatives, coordinating tax related investment issues, and ensuring the appropriate controls are in place to protect the funds along with providing detailed reporting on the fund activities to the parties.*

*Terms and Conditions - Attachment D

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 18, 2008, I electronically filed the foregoing paper with the Clerk of the Court using the ECF System which will electronically send notification of such filing to the registered participants and paper copies will be sent via first-class mail postage pre-paid to those indicated as non-registered participants on September 18, 2008.

DATED: September 18, 2008

                                    /s/ Jeffrey P. Campisi
                                    JEFFREY P. CAMPISI

- 2 -