## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

IN RE ESCALA GROUP, INC. SECURITIES
LITIGATION

This Document Relates To:  ALL ACTIONS

**FILED ELECTRONICALLY**

Master File No. 06 Civ. 3518 (AKH)

## LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR LEAD COUNSEL'S APPLICATION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

KAPLAN FOX & KILSHEIMER LLP
Robert N. Kaplan
Donald R. Hall
Jeffrey P. Campisi
850 Third Avenue, 14th Floor
New York, NY 10022
Tel:    (212) 687-1980
Fax:    (212) 687-7714

*Lead Counsel for Lead Plaintiff the Virginia Retirement System and the Settlement Class*

Dated: November 3, 2008

# TABLE OF CONTENTS

Page

Preliminary Statement ................................................................................................ 1

FACTUAL BACKGROUND ..................................................................................... 4

ARGUMENT ............................................................................................................. 5

I.  THE COURT SHOULD AWARD LEAD PLAINTIFF'S COUNSEL
    ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES FROM
    THE COMMON FUND .................................................................................... 5

    A.  Settled Precedent, Previously Recognized by this Court, Establishes
        that the Court Should Award a Reasonable Fee to Lead Plaintiff's
        Counsel ..................................................................................................... 5

    B.  An Analysis of the Relevant Criteria and Applicable Precedent
        Demonstrates that the Requested Fee Is Reasonable ................................. 6

        1.  The *Goldberger* Factors Support Award of the Requested Fee ...................... 6

            a)  The Time and Labor Expended by Counsel ......................................... 6

            b)  The Magnitude and Complexity of the Litigation ................................ 7

            c)  The Risks of the Litigation .................................................................. 9

                (1) The Contingent Nature of Lead Counsel's Representation
                    Supports the Requested Fee ............................................................ 9

                (2) Risk of Establishing Liability ....................................................... 11

            d)  The Quality of Representation ............................................................. 12

            e)  The Requested Fee in Relation to the Settlement ............................... 12

            f)  Public Policy Considerations .............................................................. 14

            g)  The Class' Reaction to the Fee Request ............................................. 14

        2.  The Lodestar Multiplier Requested by Plaintiffs' Counsel is Fair and
            Reasonable ....................................................................................................... 15

Conclusion ................................................................................................................. 16

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
    472 U.S. 299 (1985)................................................................................................. 13

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974), *abrogated on*
    *other grounds by Goldberger v. Integrated Res. Inc.*, 209 F.3d 43 (2d Cir. 2000) .................... 9

*Dura Pharmaceuticals, Inc. v. Broudo*,
    544 U.S. 336 (2005)................................................................................................... 8

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000) ................................................................................... 5, 12

*In re Adelphia Commc'ns Corp. Sec. and Derivative Litig.*,
    No. 03 MDL 1529 LMM, 2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006) ........................ 12, 14

*In re Am. Bank Note Holographics*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001) ..................................................................... 16

*In re AOL Time Warner, Inc. Sec. and ERISA Litig.*,
    No. MDL 1500, 02 Civ. 5575, 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ............................... 7

*In re Bisys Sec. Litig.*,
    No. 04 Civ. 3 840, 2007 WL 2049726 (S.D.N.Y. July 16, 2007) ........................................... 13

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ...................................................................... 12

*In re Indep. Energy Holdings PLC Sec. Litig.*,
    302 F. Supp. 2d 180 (S.D.N.Y. 2003) ................................................................ 15

*In re Indep. Energy Holdings PLC*,
    No. 00 Civ. 6689, 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003).......................................... 13

*In re Lloyd's American Trust Fund Litig.*,
    No. 96 Civ.1262, 2002 WL 31663577 (S.D.N.Y. Nov, 26, 2002), *aff'd*,
    *Adams v. Rose*, No. 03-7011, 2003 WL 21982207 (2d Cir. Aug. 30, 2003)............................ 12

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
    No. 02 MDL 1484, 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007).............................................. 7, 9

*In re Philip Servs. Corp. Sec. Litig.*,
   No. 98 Civ. 835, 2007 WL 959299 (S.D.N.Y. Mar. 28, 2007) .................................. 5, 7, 13, 14

*In re Rite Aid Corp. See. Litig.*,
   396 F.3d 294 (3d Cir. 2005) ....................................................................... 14, 15

*In re Sumitomo Copper Litig.*,
   74 F. Supp. 2d 393 (S.D.N.Y. 1999) ................................................................... 9

*In re Telik, Inc. Sec. Litig.*,
   No. 07 Civ. 4819, 2008 WL 4198516 (S.D.N.Y. Sept. 10, 2008) ........................................... 14

*Klein ex rel. SICOR, Inc. v. Salvi*,
   No. 02 Civ 1862, 2004 WL 596109 (S.D.N.Y. Mar. 30, 2004) ........................................... 6, 9

*LeBlanc-Sternberg v. Fletcher*,
   143 F.3d 748 (2d Cir. 1998) ............................................................................. 6

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) ....................................................... 5, 9, 11, 15

*Missouri v Jenkins*,
   491 U.S. 274 (1989) ..................................................................................... 12

*Rabin v. Concord Assets Group, Inc.*,
   1991 WL 275757 [1991-92 Transfer Binder] Fed. Sec. L. Rep. (CCH)
   (S.D.N.Y. 1991) .......................................................................................... 15

*Ressler v Jacobson*,
   149 F.R.D. 651 (M.D. Fla. 1992) .................................................................... 16

*Silverberg v. People's Bank*,
   23 F. App'x 46 (2d Cir. 2001) ........................................................................ 13

*Taft v. Ackermans*,
   No. 02 Civ 7951, 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) ........................................... 7

*Teachers' Ret. Sys, v. A.C.L.N., Ltd.*,
   No. 01-CV-11814, 2004 WL 1087261 (S.D.N.Y. May 14, 2004) ......................................... 10

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   395 F.3d 96 (2d Cir. 2005) .......................................................................... 6, 8

**Rules**

Fed. R. Civ. P.
   Rule 23(e) ................................................................................................ 1

   Rule 23(h) ................................................................................................ 1

## **Preliminary Statement**

Pursuant to Rules 23(e) and 23(h) of the Federal Rules of Civil Procedure, Kaplan Fox & Kilsheimer LLP ("Kaplan Fox" or "Lead Counsel"), Lead Counsel for the Lead Plaintiff the Virginia Retirement System ("Lead Plaintiff" or "VRS"), respectfully submits this memorandum of law in support of an award of reasonable attorneys' fees to Lead Counsel, and reimbursement of the expenses reasonably incurred by Lead Counsel.[1]

Since this action was commenced in May 2006, Lead Plaintiff has diligently pursued its claims against Defendants. Under the direction of Lead Plaintiff, Lead Counsel has engaged in (1) investigating potential claims and drafting of the amended complaints, (2) interviews with former employees of Escala Group Inc. ("Escala or "the Company") and other individuals with relevant information (including in-person interviews with individuals located in Spain and the United Kingdom), (3) consulting with experts concerning the collectibles market, business valuation, accounting and damages, (4) opposing defendants' motions to dismiss, (5) promulgating certain discovery, including reviewing and analyzing over 1.1 million pages of documents, (6) moving for class certification (7) conducting settlement negotiations before an experienced mediator, and (8) drafting extensive settlement papers, which included months of negotiations concerning the terms of the settlement papers and the stock guarantee. Lead Counsel has been vigorously prosecuting this case for over two and one-half years. *See* Declaration of Robert N. Kaplan in Support of Lead Plaintiff's Motion for Final Approval of Settlement, Lead Counsel's Application for Attorneys' Fees and Reimbursement of Expenses, and the Plan of Allocation, dated November 3, 2008, ¶2 (the "Kaplan Declaration" or "Kaplan Decl.")

---

[1]     Lead Counsel was assisted by Labaton Sucharow LLP ("Labaton").

The settlement provides $10,000,000 in cash, plus to date more than $200,000 in interest, and 4 million shares of Escala Common Stock with a guaranteed value of at least $8,000,000.

Lead Counsel seeks an award of attorneys' fees equal to 22% of the total amount of the Settlement Fund, (proportionately in cash and stock) a percentage that is well within the range of fees awarded in this Circuit and District and by other federal courts in cases of this nature.[2] Kaplan Decl. ¶68. This percentage is contained in a negotiated fee agreement that Lead Plaintiff negotiated with Lead Counsel at the commencement of the litigation, subject, of course, to court approval. *Id.* ¶69. Combined, Lead Counsel's request for attorneys' fees and reimbursement of expenses of $250,000, are in total less than 24% of the settlement.

The requested attorneys' fee award of $3,960,000, assuming the stock is valued at $2 per share (22% of $18,000,000) represents a multiplier of 2.56 over total reported lodestar of $1,544,639, which is well within the range of the prevailing multiplier awarded by courts in cases of this type. The Kaplan Declaration sets forth for Kaplan Fox, the attorneys and paralegals from each firm who worked on the case and the number of hours and tasks performed by each. Kaplan Decl. ¶77, Exhibit 4. This information is set forth for the Labaton firm in the declaration of Ira A. Schochet, sworn to November 3, 2008 ("Schochet Declaration"), annexed to the Kaplan Declaration as Exhibit 6.

As discussed below, the requested fee is fair and reasonable. Lead Counsel's experience in class action and securities cases allowed Lead Counsel to identify the complex issues involved in the litigation and to formulate strategies to effectively prosecute a litigation of this complexity. *Id.* ¶70. Moreover, Lead Counsel submits that its reputation as ready, willing and able to see a

---

[2]    The cash consideration of $10 million is 56% of the settlement consideration, and $8 million in Escala Common Stock is 44% of the settlement consideration. If the Court grants Lead Counsel's application for attorneys' fees of 22% of the settlement, Lead Counsel would receive $2,200,000 in cash and $1,760,000 in Escala Common Stock, assuming a value of $2 per share.

meritorious case through trial and appeals was valuable in the settlement negotiations. Lead Counsel has many years of experience in complex federal civil litigation, particularly the litigation of securities and other class actions.  *Id.* ¶76.

Furthermore, at the early stages of this case, without the benefit of formal discovery, Lead Counsel's investigation uncovered alleged wrongdoing which was pleaded in the CAC on October 13, 2006, including improper accounting of certain transactions involving Escala and a related party and improper round trip transactions between Escala and Filasyl.  *Id.* ¶71.  It was not until December 2006, that Escala disclosed that, based on the findings of an investigation by its Audit Committee, the Company's Board of Directors and the Audit Committee determined to restate Escala's financial statements for its fiscal years ended June 30, 2003, 2004, 2005 and for the first three quarters of the fiscal year ended June 30, 2006 with respect to certain related-party transactions with Afinsa, Escala's parent.  *Id.* ¶72.  Moreover, it was not until June 2007 that the Company admitted that (i) Escala used Filasyl, to improperly sell inventory to Afinsa during the Class Period, and (ii) that Escala's "sales" of philatelic materials to Afinsa were improperly reported as "revenue," when they should have been reported as an adjustment to the Company's equity.  *Id.* ¶73.

Lead Counsel litigated this Action in a non-duplicative and efficient manner.  *Id.* ¶78. Duplication of effort was avoided by proper delegation and division of responsibility.  Where appropriate, work performed on behalf of the class was assigned to attorneys with lower hourly rates. *Id.*

As set forth in the Affidavit of Peter M. Craig, dated October 29, 2008 (Kaplan Declaration Ex. 1), ¶10, 11,371 Notices of Pendency and Proposed Settlement of Class Action ("Notice of Settlement") and Proof of Claim and Release ("Proof of Claim") forms have been

disseminated that notified Class members that Lead Counsel would seek up to 22% of the settlement in fees and up to $250,000 in reimbursement of expenses. Furthermore, as set forth in the Affidavit of Erin Ostenson, sworn to on October 8, 2008, (Kaplan Declaration Ex. 2), notice of the settlement, request for fees and reimbursement of expenses was published in the national edition of the *Wall Street Journal* on October 8, 2008. The dates to object to Lead Counsel's request for fees and reimbursement of expenses, and to opt-out of the settlement are November 11 and 13, 2008 respectively. To date, Lead Counsel is unaware of any objections or requests to opt-out.

For the reasons set forth herein and in the accompanying Kaplan Declaration, Lead Plaintiff respectfully requests that the Court enter the proposed Order Awarding Attorneys' Fees and Expenses (the "Fee Order"), in the form submitted herewith, (i) approving an award of attorneys' fees to Plaintiffs' Counsel in the amount of 22% of the Settlement Fund (in both cash and stock), plus interest, and (ii) approving reimbursement of Plaintiffs' Counsel's reasonable expenses in the amount of $250,000.[3]

## FACTUAL BACKGROUND

Lead Plaintiff respectfully refers the Court to the Kaplan Declaration submitted herewith for a full discussion of the services performed by Lead Counsel.

---

[3]    As set forth in the Kaplan and Schochet Declarations, combined Kaplan Fox and Labaton have total expenses of $307,866.03, but are limiting the request to $250,000 because that was the limitation in the Notice.

## ARGUMENT

I.    **THE COURT SHOULD AWARD LEAD PLAINTIFF'S COUNSEL ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES FROM THE COMMON FUND**

    A.    **Settled Precedent, Previously Recognized by this Court, Establishes that the Court Should Award a Reasonable Fee to Lead Plaintiff's Counsel**

As the Court has explained, where "'an attorney succeeds in creating a common fund from which members of a class are compensated for a common injury inflicted on the class,' as happens when a judgment is entered in a securities class action litigation, the attorney is entitled to the reasonable value of the services performed in creating that class recovery, as set by the court." *In re Philip Servs. Corp. Sec. Litig.*, No. 98 Civ. 835, 2007 WL 959299, at *1 (S.D.N.Y. Mar. 28, 2007) (Hellerstein, J.) (quoting *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000)).

In *Philip Services*, the court identified the factors relevant to a fee award: "There are six general criteria for establishing a reasonable attorneys' fee: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the relationship of the fee to the recovery; and (6) public policy considerations." *Id.* (citing *Goldberger*, 209 F.3d at 50). Courts also consider the reaction of the Class to the fee request in deciding how large a fee to award. *See Maley v. Del Global Techs. Corp*, 186 F. Supp. 2d 358, 374 (S.D.N.Y. 2002).

The Second Circuit, and a number of district courts in this District, have observed that

> "[t]he trend in this Circuit is toward the percentage method, which 'directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation.' In contrast, the 'lodestar create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits.'"

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 121 (2d Cir. 2005) (alternations in original, citations omitted).

As this Court "observed in *Klein ex rel. SICOR, Inc. v. Salvi,* both should be considered, for the reasonable value of services performed cannot be larger than a reasonable proportion of the class recovery, and a calculation of fee based on a percentage of recovery should not be allowed if it creates a windfall recovery to attorneys in the service of their clients." *Philip Servs.,* 2007 WL 959299, at \*2 (citing *Goldberger,* 209 F.3d at 48-50 and *Klein ex rel. SICOR, Inc. v. Salvi,* No. 02 Civ 1862, 2004 WL 596109, at \*5-7 (S.D.N.Y. Mar. 30, 2004) (Hellerstein, J.)).

**B.     An Analysis of the Relevant Criteria and Applicable Precedent Demonstrates that the Requested Fee Is Reasonable**

Applying the *Goldberger* factors cited by the Court in *Philip Services,* 2007 WL 959299, at \* 1, demonstrates that the fee requested by Lead Plaintiff's Counsel, 22% of the Settlement Amount, representing a multiplier of 2.56, is reasonable, whether calculated via the "lodestar" or "percentage of the fund" methods.

**1.     The *Goldberger* Factors Support Award of the Requested Fee**

**a)     The Time and Labor Expended by Counsel**

As detailed in the declarations regarding fees and expenses submitted by plaintiffs' counsel herewith, they devoted a total of approximately 3985.95 hours to this matter, yielding a "lodestar" amount of $1,544,639 at counsel's regular (current) billing rates. *See* Kaplan Decl. ¶¶77, 79 Exhibits 4 and 6 (Schochet Declaration, Ex. B). As explained by the Second Circuit, "current rates, rather than historical rates, should be applied in order to compensate for the delay in payment." *LeBlanc-Sternberg v. Fletcher,* 143 F.3d 748, 864 (2d Cir. 1998).

With respect to the hours billed, Lead Counsel submits that the substantial time devoted to this litigation reflects the tremendous effort exerted to bring this case to a favorable resolution.

Document review was also structured to limit overall cost, with the bulk of initial review conducted by junior attorneys. Kaplan Decl. ¶78. Additionally, attorneys performed tasks in a non-duplicative and efficient manner, and duplication of effort was avoided by proper delegation and division of responsibility. *Id.*

With respect to billing rates, Lead Counsel submits that the rates billed are comparable to peer plaintiffs' and defense-side law firms litigating matters of similar magnitude. *Id.* ¶78. Similar or higher billing rates (reaching $850 per hour) have been approved by other courts in this District. *See In re Merrill Lynch & Co. Research Reports Sec. Litig.*, No. 02 MDL 1484, 2007 WL 313474, at *22 (S.D.N.Y. Feb. 1, 2007) (approving billing rates up to $850 per hour and observing that "[t]he rates charged by counsel, though high, are not inordinate for top-caliber New York law firms"). The average rate approved by the Court for the New York-based co-Lead Counsel in *Philip Services* was $574.31 per hour, approximately $110 per more than the average hourly rate for Kaplan Fox. *Id.* ¶76, Exhibit 4; *see also* 2007 WL 959299, at *3 (describing counsel's rates as "while not at the maximum level of attorneys practicing in the cities of co-lead counsel, New York and Boston, are close to the top range").

Accordingly, Lead Counsel submits that the calculated lodestar of $1,544,639 for Kaplan Fox and Labaton represents the appropriate amount on which to apply a multiplier to reflect the contingent nature of the fee and risk incurred by Lead Counsel, which is discussed more fully below.

### b)  The Magnitude and Complexity of the Litigation

Courts have recognized the "notorious complexity" of securities class action litigation. *Taft v. Ackermans*, No. 02 Civ 7951, 2007 WL 414493, at *5 (S.D.N.Y. Jan. 31, 2007); In re *AOL Time Warner, Inc. Sec. Litig.*, No. MDL 1500, 02 Civ. 5575, 2006 WL 903236, at *8

(S.D.N.Y. Apr. 6, 2006). In addition to the complex issues of law and fact associated with securities class actions generally, this case presented unique issues of loss causation, among other complicating factors. For example, Defendants moved pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure and the PSRLA to dismiss the CAC and asserted that the CAC was deficient because it failed to adequately plead loss causation under the Supreme Court's decision in *Dura Pharmaceuticals, Inc*. v. *Broudo*, 544 U.S. 336 (2005) because the announcements on May 9, 2006 did not disclose the substance of the scheme alleged in the CAC. Lead Counsel's investigation of corporate fraud was complicated by the fact that many documents and informants that were essential to the investigation are located in Europe, and the fact that Afinsa and Auctentia, corporate affiliates of Escala, had filed for bankruptcy protection in Spain. Kaplan Decl. ¶¶ 35, 45-48.

Furthermore, unlike those cases where Lead Counsel were able to "free ride" on the work of others, such as the United States Securities and Exchange Commission ("SEC"), here Lead Counsel developed the case against Defendants. At the early stages of this case, without the benefit of formal discovery under the Federal Rules of Civil Procedure, Lead Counsel's investigation uncovered alleged wrongdoing which was pleaded in the CAC including improper accounting of certain transactions involving Escala including improper related party transactions and round trip transactions between Escala and a Spanish company named Filasyl. Kaplan Decl. ¶¶ 71-73.

Courts have regularly recognized that the efforts of plaintiffs' counsel in achieving a favorable settlement should be accorded greater weight when achieved without the benefit of a governmental investigation. *See Wal-Mart*, 396 F.3d at 122 (approving the district court's analysis that an extraordinary fee is warranted where, among other factors, "plaintiffs' counsel

did not have the benefit of 'piggy-backing' off of a previous case [and] instead, the Government piggy-backed off of the plaintiffs' counsel work"); *Maley,* 186 F. Supp. 2d at 371 (in awarding attorneys' fees of 33-1/3% of the settlement fund, the court noted, "[i]n this Action, Plaintiffs' Class Counsel did not 'piggy back' on any prior governmental action . . . . Plaintiffs' Class Counsel developed, litigated and successfully negotiated this Action by themselves, expending substantial time and effort."); *In re Sumitomo Copper Litig.,* 74 F. Supp. 2d 393, 395 (S.D.N.Y. 1999) (in awarding fees of 27.5% of a $ 116.6 million common fund, the court noted "[t]here was no governmental assistance to ease the task with which Petitioners [were] confronted")

c)    **The Risks of the Litigation**

(1)    **The Contingent Nature of Lead Counsel's Representation Supports the Requested Fee**

As this Court observed in *Klein ex rel. SICOR, Inc. v. Salvi*, "the risk in pursuing this case, is considered most important" of the factors relevant to determining an appropriate fee. 2004 WL 596109, at *7; *see also Merrill Lynch*, 2007 WL 313474, at *16 ("Courts of this Circuit have recognized the risk of litigation to be "perhaps the foremost factor to be considered in determining the award of appropriate attorneys' fees.") (internal quotation marks and citation omitted).

The Second Circuit has observed:

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974) (citation omitted). "[L]ittle about litigation is risk-free, and class actions confront even more substantial risks than other

forms of litigation." *Teachers' Ret. Sys, v. A.C.L.N., Ltd.*, No. 01-CV-11814, 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004).

Lead Counsel undertook the representation of Lead Plaintiff and the Class in this Action on a wholly contingent-fee basis, investing a substantial amount of time and money to prosecute this Action without any guarantee of compensation or of recovering out-of-pocket expenses. Kaplan Decl. ¶¶74, 92.

This Settlement was not reached until after Lead Plaintiff had extensively investigated and prosecuted this Action, including: (1) the investigation and filing of this action, (2) drafting of the amended complaints, (3) interviews with former employees of Escala and other individuals with relevant information (including in person interviews in Barcelona, Madrid and London), (4) consulting with experts concerning the collectibles market, business valuation, accounting and damages, (5) opposing defendants' motions to dismiss, (6) the promulgation of certain discovery, including the review and analysis of over 1.1 million pages of documents, (7) Lead Plaintiff's motion for class certification (8) settlement negotiations before an experienced mediator, and (9) drafting of extensive settlement papers, and months of negotiations concerning the terms of the settlement papers.  Kaplan Decl. ¶ 2.

Furthermore, as noted above, at the early stages of this case, without the benefit of formal discovery under the Federal Rules of Civil Procedure, Lead Counsel's investigation was ahead of Escala's audit committee and the SEC in uncovering improper accounting of certain transactions involving Escala. *Id.* ¶¶ 71-73.  All of the costs and expenses associated with Lead Counsel's above-described effort were advanced by Lead Counsel with no guarantee of compensation. Indeed, Lead Counsel "undertook a substantial risk of absolute non-payment in prosecuting this

action, for which they should be adequately compensated." *Maley*, 186 F. Supp. 2d at 372 (internal quotation marks and citation omitted).

There are numerous cases where plaintiffs' counsel in contingent fee cases, after expenditures of thousands of hours and significant out-of-pocket expenditures, have received no compensation. Lead Counsel submits that their willingness to continue to prosecute this Action and assume the risk of an adverse outcome resulting in no compensation, including the risks involved with taking the Action to trial and beyond, was an important circumstance giving rise to the substantial settlement achieved herein. Lead Counsel knows from direct experience that despite the most vigorous and competent of efforts, attorneys' success in contingent litigation, such as this, is never assured. Thus, Lead Counsel respectfully submits that the Court should consider the contingent risk that Lead Counsel undertook in pursuing this Action on behalf of Lead Plaintiff and the Class.

### (2)    Risk of Establishing Liability and Establish Damages

As discussed more fully in the accompany memorandum of law in support of the settlement (Section II.C. 4-6) and in the Kaplan Declaration, although the Court found that Lead Plaintiff's pleadings were sufficient to state a claim, and while Lead Plaintiff believes it had a substantial prospect of prevailing at trial, it nevertheless faced significant risks in prosecuting this Action.

Furthermore, Lead Plaintiff faced the prospect of an inevitable "battle of the experts," and a genuine risk that Class damages could be reduced substantially. There is a question whether the Class would have been able to recover anything substantial from Escala, if Lead Counsel did not reach this Settlement and the case continued. Kaplan Decl. ¶58. Therefore, the risks faced by Lead Plaintiff support the requested fee award.

11

###        d)        **The Quality of Representation**

The quality of representation supports the reasonableness of the requested fee. *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004). Given the complexity of the claim, the presence of numerous contested issues (including falsity, scienter, loss causation and damages), and the resources possessed by the Defendants, this case required the expertise and capacity of Lead Counsel, and their proven ability to prosecute cases on a contingent basis over an extended period and through trial. Lead Counsel has many years of experience in complex federal civil litigation, particularly the litigation of securities and other class actions. Kaplan Decl. ¶76, Exhibit 3.

The quality of opposing counsel is also important in evaluating the quality of Lead Counsel's work. *See In re Adelphia Commc'ns Corp. Sec. and Derivative Litig.*, No. 03 MDL 1529 LMM, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by 'formidable opposing counsel from some of the best defense firms in the country' also evidences the high quality of lead counsels' work."). The skill and tenacity of Kramer Levin Naftalis & Frankel LLP, Goodwin Procter LLP, and Lovells LLP are well known.

###        e)        **The Requested Fee in Relation to the Settlement**

Courts have interpreted this factor as requiring the Court to review the fee requested in terms of the percentage of the total recovery that it represents. Regardless of which method a court uses to award attorneys' fees, the award must be reasonable under the circumstances of the particular case. *Goldberger*, 209 F.3d at 47. The Supreme Court has held that an appropriate fee is intended to approximate what counsel would receive if they were bargaining for the services in the marketplace. *Missouri v Jenkins*, 491 U.S. 274, 285 (1989). Here, the requested fee is

12

contained in an agreement Lead Plaintiff negotiated with Lead Counsel at the commencement of the litigation.

The 22% fee requested by Lead Counsel in this Action is well within the range of percentage fees awarded in the Second Circuit. *See Silverberg v. People's Bank*, 23 F. App'x 46, 48 (2d Cir. 2001) (affirming district court order awarding attorneys' fees and expenses of nearly 33-1/3% of $7.7 million fund).

In *In re Lloyd's American Trust Fund Litig.*, No. 96 Civ.1262, 2002 WL 31663577, at *26 (S.D.N.Y. Nov, 26, 2002), *aff'd, Adams v. Rose*, No. 03-7011, 2003 WL 21982207 (2d Cir. Aug. 30, 2003), Judge Sweet awarded 28% of a roughly $20 million settlement fund for combined fees and expenses, and observed that "[i]n this district alone, there are scores of common fund cases where fees alone ( i.e., where expenses are awarded in addition to the fee percentage) were awarded in the range of 33-1/3% of the settlement fund." *Id.* at *26; *see also, e.g., In re Bisys Sec. Litig.*, No. 04 Civ. 3 840, 2007 WL 2049726 (S.D.N.Y. July 16, 2007) (awarding 30% fee on $65 million settlement); *Maley*, 186 F. Supp. 2d at 374 (awarding 33-1/3% of settlement fund valued at more than $11.5 million).

As this Court has previously observed, "percentages for awards tend to be reduced as recoveries are increased," *Philip Servs.*, 2007 WL 959299, at *2; *accord In re Indep. Energy Holdings PLC*, No. 00 Civ. 6689, 2003 WL 22244676, at *6 (S.D.N.Y. Sept. 29, 2003) ("[T]he percentage used in calculating any given fee award must follow a sliding-scale and must bear an inverse relationship to the amount of the settlement.").

Accordingly, the somewhat lower percentages awarded for much larger settlements also support the reasonableness of the 22% fee requested here. *In Philip Services*, this Court approved a fee of $21 million, representing approximately 26% of a $79,750,000 recovery. 2007 WL

959299, at *3; *Adelphia Commc'ns*, 2006 WL 3378705, at *3 (awarding 21.4% of $455 million settlement).

### f)    <u>Public Policy Considerations</u>

This Court has previously observed that the fee awarded "should reflect the importance of private securities lawsuits in the scheme of overall securities law enforcement, the need properly to motivate counsel to represent private litigants in securities actions, but the need, also, to avoid creating windfalls and inflated incentives to litigate and undue diminution of benefits to the injured class." *Philips Servs.*, 2007 WL 959299, at * 1 (citations omitted). The Supreme Court has recognized the importance of private actions to the enforcement of the securities laws. *See Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) ("[W]e repeatedly have emphasized that implied private actions provide a most effective weapon in the enforcement of the securities laws and are a necessary supplement to Commission action.") (internal quotations omitted); *see also In re Telik, Inc. Sec. Litig.*, No. 07 Civ. 4819, 2008 WL 4198516, at *13 (S.D.N.Y. Sept. 10, 2008) (quoting *Bateman Eichler*, 472 U.S. at 310).

Particularly, because it is unlikely that the typical class member would be able to pursue this type of long and protracted litigation at his or her own expense, this Court should find that public policy favors granting the fee and expense application in full.

### g)    <u>The Class' Reaction to the Fee Request</u>

In addition to the criteria set forth in *Goldberger*, courts in the Second Circuit consider the reaction of the Class to the fee request in deciding how large a fee to award. *See Maley*, 186 F. Supp. 2d at 374. While "the absence of objections is not decisive," *Philip Services*, 2007 WL 959299, at *2, this factor may be deemed relevant. *See In re Rite Aid Corp. See. Litig.*, 396 F.3d

294, 305 (3d Cir. 2005) ("The class's reaction to the fee request supports approval of the requested fees.").

As discussed above, the Claims Administrator has mailed 11,371 packets containing the Notice and Proof of Claim to Class members and nominees, informing them, *inter alia*, that Plaintiffs' Counsel would be requesting an award of attorneys' fees not to exceed 22% of the Kaplan Decl. ¶ 80. The time to object to the fee request expires on November 11, 2008. To date, not one Class Member has objected to Lead Counsel's request for fees and expenses. *Id.*; *see, e.g., Rite Aid*, 396 F.3d at 305 (noting that where there were only two objectors out of 300,000 class members, "such a low level of objection is a 'rare phenomenon'") (citation omitted).

### 2. The Lodestar Multiplier Requested by Plaintiffs' Counsel is Fair and Reasonable

Finally, Lead Counsel submits that the lodestar multiplier they request, approximately 2.56, is fair and reasonable. For example, the Court in *Maley* awarded attorneys fees of 33-1/3% which equaled a 4.65 multiplier. 186 F. Supp. 2d 358; *see also Lloyd's American Trust Fund*, 2002 WL 31663577, at *27 (noting that "multipliers of between 3 and 4.5 have become common" and collecting cases) (quoting *Rabin v. Concord Assets Group, Inc.*, 1991 WL 275757 [1991-92 Transfer Binder] Fed. Sec. L. Rep. (CCH) p. 96,471 (S.D.N.Y. 1991). Accordingly, Lead Counsel submits that the request, is well within the range of reasonableness.

## II.    LEAD COUNSEL'S EXPENSES ARE REASONABLE

Lead Counsel also requests reimbursement in the amount of $250,000 for out-of pocket expenses incurred in connection with the prosecution of this Action. Lead Counsel and the Labaton firm have submitted affidavits attesting to the accuracy of their expenses. Kaplan Decl. Exhibits 4 and 6 (Schochet Declaration, Ex. B). *See In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (court may compensate class counsel for

15

reasonable out-of-pocket expenses necessary to the representation of the class). These expenses include photocopying, expert fees, travel, costs of computer-based legal research, and the mediator's fees, as well as messenger services, postage, express mail, long distance telephone and facsimile expenses, and other incidental expenses directly related to the prosecution of this Action. These expenses were essential to achieving the proposed Settlement. Moreover, to date, not a single Class member has objected to this request and the declarations of plaintiffs' counsel submitted herewith demonstrate that the requested expenses were reasonable and appropriately incurred. *See, e.g., In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 433 (S.D.N.Y. 2001); *Ressler v Jacobson*, 149 F.R.D. 651, 657 (M.D. Fla. 1992). Indeed, as set forth in the Kaplan and Schochet Declarations, plaintiffs' counsel's expenses total $307,866.03, but counsel are limiting their expense request to $250,000, the amount in the Notice.

### Conclusion

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court enter the proposed Fee Order, in the form submitted herewith, (i) approving an award of attorneys' fees to Lead Counsel in the amount of 22% of the Settlement Fund (cash and stock), plus interest, and (ii) approving reimbursement of Lead Counsel's reasonable expenses in the amount of $250,000.

Dated: November 3, 2008                    Respectfully submitted,

                                        **KAPLAN FOX & KILSHEIMER LLP**

                                        By: _____

                                        Robert N. Kaplan
                                        Donald R. Hall
                                        Jeffrey P. Campisi
                                        850 Third Avenue, 14th Floor
                                        New York, NY 10022
                                        Tel:    (212) 687-1980

Fax:    (212) 687-7714

**_Lead Counsel for Lead Plaintiff the Virginia_**
**_Retirement System and the Settlement Class_**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 3, 2008, I electronically filed the foregoing paper with the Clerk of the Court using the ECF System which will electronically send notification of such filing to the registered participants and paper copies will be sent via first-class mail postage pre-paid to those indicated as non-registered participants on November 3, 2008.

/s/ Robert N. Kaplan
Robert N. Kaplan

November 3, 2008