**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE ESCALA GROUP, INC. SECURITIES
LITIGATION

This Document Relates To:  ALL ACTIONS

**FILED ELECTRONICALLY**

Master File No. 06 Civ. 3518 (AKH)

**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR**
**FINAL APPROVAL OF SETTLEMENT AND THE PLAN OF ALLOCATION**

**KAPLAN FOX & KILSHEIMER LLP**
Robert N. Kaplan
Donald R. Hall
Jeffrey P. Campisi
850 Third Avenue, 14th Floor
New York, NY 10022
Tel:    (212) 687-1980
Fax:    (212) 687-7714

*Lead Counsel for Lead Plaintiff the Virginia*
*Retirement System and the Settlement Class*

Dated: November 3, 2008

# TABLE OF CONTENTS

Page

Preliminary Statement ............................................................................................... 1

FACTUAL BACKGROUND ..................................................................................... 4

ARGUMENT ............................................................................................................. 4

I.    THE SETTLEMENT IS PROCEDURALLY AND SUBSTANTIVELY
      FAIR, ADEQUATE AND REASONABLE AND SHOULD BE APPROVED ............... 4

      A.    Under Prevailing Law, Class Action Settlements Should Be Approved
            If They Are Fair, Adequate and Reasonable ........................................... 4

      B.    The Settlement Is Procedurally Fair Because It Is the Production of
            Arm's-Length Negotiations Among Experienced Counsel After Meaningful
            Discovery ................................................................................................ 7

      C.    The Settlement is Substantively Fair, Adequate and Reasonable According
            to the *Grinnell* Factors ............................................................................ 9

            1.    The Complexity, Expense and Duration of This Litigation Warrant
                  Approval of the Settlement ............................................................ 9

            2.    The Lack of Objections to the Settlement and the Absence of Opt-Outs
                  Support Final Approval .............................................................. 11

            3.    The Stage of the Proceedings a Which the Case Settled Allowed
                  Lead Plaintiff to Make Informed Decisions as to the Settlement .................... 12

            4.    Lead Plaintiff Faced Significant Risks in Establishing Liability ................... 13

            5.    Lead Plaintiff Faced Risks in Establishing Damages ........................... 15

            6.    The Risks of Maintaining the Class Action Through Trial Weigh in
                  Favor of Approval ..................................................................... 16

            7.    The Settlement is Reasonable in Light of the Ability of Defendants to
                  Withstand a Judgment ................................................................ 16

            8.    The Settlement Amount is Reasonable in View of the Best Possible
                  Recovery and the Myriad Risks in this Litigation ............................ 17

II.   THE PLAN OF ALLOCATION IS FAIR AND REASONABLE AND
      SHOULD BE APPROVED ............................................................................. 18

Conclusion ................................................................................................................ 21

i

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

*AUSA Life Ins. Co. v. Ernst & Young,*
  No. 00-9472, 2002 WL 1467546 (2d Cir. July 8, 2002) ...........................................................14

*Becher v. Long Island Lighting Co.,*
  64 F. Supp. 2d 174 (E.D.N.Y. 1999)........................................................................................8

*Carson v. American Brands, Inc.,*
  450 U.S. 79 (1981) ....................................................................................................................6

*City of Detroit v. Grinnell Corp.,*
  495 F.2d 448 (2d Cir. 1974), *abrogated on*
  *other grounds by Goldberger v. Integrated Res. Inc.*, 209 F.3d 43 (2d Cir. 2000)..............6, 12

*D'Amato v. Deutsche Bank,*
  236 F.3d 78 (2d Cir. 2001) .......................................................................................................5

*Dura Pharmaceuticals, Inc. v. Broudo,*
  544 U.S. 336 (2005) ...........................................................................................................15, 19

*Hicks v. Morgan Stanley & Co.,*
  No. 01 Civ. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) .................................11

*In re AOL Time Warner, Inc. Sec. and ERISA Litig.,*
  No. MDL 1500, 02 Civ. 5575, 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)............12, 14, 16, 18

*In re Apollo Group, Inc. Sec. Litig.,*
  No. CV 04-2147-PHX-JAT, 2008 WL 3072731 (D. Ariz. Aug. 4, 2008) ................................14

*In re Global Crossing Sec. & ERISA Litig.,*
  225 F.R.D. 436 (S.D.N.Y. 2004)......................................................................................passim

*In re Gulf Oil/Cities Serv. Tender Offer Litig.,*
  142 F.R.D. 588 (S.D.N.Y. 1992)............................................................................................18

*In re Initial Pub. Offering Sec. Litig.,*
  226 F.R.D. 186 (S.D.N.Y. 2005)..............................................................................................8

*In re Initial Public Offerings Sec. Litig.*, 471 F.3d 24, 27 (2d Cir. 2006) ....................................16

*In re NASDAQ Market-Makers Antitrust Litig.,*
  187 F.R.D. 465 (S.D.N.Y. 1998)......................................................................................12, 16

ii

*In re PaineWebber Ltd. P'ships Litig.*,
   147 F.3d 132 (2d Cir. 1998) ..................................................................5

*In re PaineWebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997) ...........................9, 15, 17

*In re Parmalat Sec. Litig.*,
   375 F. Supp. 2d 278 (S.D.N.Y. 2005) ..................................................14

*In re Prudential Inc. Co. Am. Sales Practices Litig.*,
   148 F.3d 283 (3d Cir. 1998) ..................................................................10

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
   163 F.R.D. 200 (S.D.N.Y. 1995)...........................................................5

*In re Visa Check/Master Money Antitrust Litig.*,
   297 F. Supp. 2d 503 (E.D.N.Y. 2003).................................................5

*In re Warner Commc'ns Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y 1985) ....................................................15, 17

*Joel A. v. Giuliani*,
   218 F.3d 132 (2d Cir. 2000) ..................................................................5

*Klein ex rel. IRA v. PDG Remediation, Inc.*,
   No. 95 Civ. 4954 (DAB), 1999 WL 38179 (S.D.N.Y. Jan. 28, 1999) .....................11

*Lapin v. Goldman Sachs Group, Inc.*,
   506 F. Supp. 2d 221 (S.D.N.Y. 2006) ..................................................14

*Levy ex rel. Mktg. Servs. Group, Inc. v. GE Capital Corp.*,
   No. 99 Civ. 10560, 2001 WL 989873 (S.D.N.Y. Aug. 31, 2001)...............................6

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) ...........................................9, 11, 14, 15

*Milstein v. Werner*,
   57 F.R.D. 515 (S.D.N.Y. 1972), *vacated on other grounds by Brennan v. New York City Bd.
   Of Educ.*, 260 F.3d 123 (2d Cir. 2001) ..................................................7

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972) ..................................................................17

*RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*,
   No. 94 Civ. 5587, 2003 WL 21136726 (S.D.N.Y. May 15, 2003) .....................12, 13

*Robbins v. Koger Props, Inc.*,
   116 F.3d 1441 (11th Cir. 1997) ..................................................................14

*Ross v. A.H. Robins Co.,*
    700 F. Supp. 682 (S.D.N.Y. 1988) ................................................................12

*Taft v. Ackermans,*
    No. 02 Civ 7951, 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) ......................5

*Thompson v. Metro. Life Ins. Co.,*
    216 .F.R.D. 55 (S.D.N.Y. 2003)......................................................................6

*United States v. New York City Bd. of Educ.,*
    85 F. Supp. 2d 130 (E.D.N.Y. 2000) ..............................................................7

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
    395 F.3d 96 (2d Cir. 2005) ...............................................................5, 6, 7, 17

*Weil v. Long Island Sav. Bank,*
    188 F. Supp. 2d 258 (E.D.N.Y. 2002) ..........................................................13

*Weinberger v. Kendrick,*
    698 F.2d 61 (2d Cir. 1982) ..............................................................................6

*Winkler v. NRD Mining, Ltd.,*
    198 F.R.D. 355 (E.D.N.Y. Mar. 31, 2000) ...................................................14

**Statutes**

Securities Exchange Act of 1934
    Section 10(b) ..................................................................................................14

    Section 20(a).....................................................................................................14

    Section 21D(e), 15 U.S.C. §78u-4(e) ............................................................20

**Other Authorities**

David F. Herr, *Manual for Complex Litigation* (3d. ed. 1995) ........................7

**Rules**

Fed. R. Civ. P.
    Rule 23(c)(1) ..................................................................................................16

    Rule 23(e) .........................................................................................................1

    Rule 23(e)(1) ....................................................................................................4

    Rule 23 (e)(2) ...................................................................................................4

    Rule 23(h).........................................................................................................1

**Preliminary Statement**

Pursuant to Rules 23(e) and 23(h) of the Federal Rules of Civil Procedure, Lead Plaintiff the Virginia Retirement System ("Lead Plaintiff" or "VRS"), on behalf of itself and all persons who purchased common stock of Escala Group Inc. ("Escala" or the "Company") during the period September 5, 2005 through May 8, 2006 ("Class Period"), together with Kaplan Fox & Kilsheimer LLP ("Kaplan Fox" or "Lead Counsel"), respectfully submit this memorandum of law in support of (1) final approval of the proposed settlement of this class action (the "Action") among Lead Plaintiff and defendants Escala, Greg Manning, Larry Crawford, Jose Miguel Herrero, Esteban Perez, Greg Roberts, Juan Antonio Cano, and Amper, Politziner & Mattia, P.C. ("AP&M") (collectively, the "Defendants") and additional former defendants Afinsa Bienes Tangibles S.A. ("Afinsa"), Auctentia S.L. ("Auctentia"), Anthony Bongiovanni, Scott S. Rosenblum, James Davin, and Mark Segall (collectively, the "Additional Named Parties"), under the terms set forth in the Stipulation and Agreement of Settlement executed on September 10, 2008 (the "Settlement Agreement"), and (2) approval of the proposed plan for the allocation of the net proceeds of the settlement (the "Plan of Allocation") set forth in the notice disseminated to the members of the Class.

The settlement provides $10,000,000 in cash, plus to date more than $200,000 in interest, and 4 million shares of Escala Common Stock with a guaranteed value of at least $8,000,000 and resolves Lead Plaintiff's claims against Defendants. As further discussed in the accompanying Declaration of Robert N. Kaplan in Support of Lead Plaintiff's Motion for Final Approval of Settlement, Lead Counsel's Application for Attorneys' Fees and Reimbursement of Expenses, and the Plan of Allocation, dated November 3, 2008 (the "Kaplan Declaration" or "Kaplan Decl."), the parties agreed to settle this matter in principle in January 2008. However, it took

1

many months to negotiate the terms of the settlement, including the terms of the stock to be issued under the settlement, and it was not until August 2008 that the bankruptcy court in Spain approved the settlement on behalf of Afinsa and Auctentia. Kaplan Dec. ¶¶4, 65. After the parties agreed in principle to settle, Lead Counsel secured an agreement from Escala to pay interest on the cash component of the settlement in the amount of 5% per annum. *Id.* ¶4. The Stipulation of Settlement (the "Settlement Agreement") was signed on September 10, 2008. At the time the settlement was submitted to the Court for preliminary approval, more than $200,000 in interest had accrued, which has now been paid. Kaplan Decl. ¶66.

As part of the settlement, Escala has agreed to issue 4 million Escala common shares with a guaranteed value of $2 per share.[1] Lead Counsel and counsel for Escala carefully negotiated the terms of the stock component of the settlement for months. The guarantee of the stock portion of the settlement was carefully structured and balanced by Lead Plaintiff in consultation with our investment banking consultant, Hugh Lamle of MD Sass & Co. Kaplan Decl. ¶¶59-64. The Shares will be issued free of any restrictions on transfer in accordance with the exemption from registration contained in Section 3(a)(10) under the Securities Act of 1933, as amended, and will be identical in all respects to Escala's currently outstanding common stock. Until the Shares are issued in accordance with the Settlement Agreement, the 4 million shares shall be treated identically to the existing Escala Common Stock and shall receive all benefits, except for voting rights, that accrue to the existing Escala Common Stock (including but not limited to stock or cash dividends).

Five business days before a distribution date ("Notification Date"), Plaintiffs' Lead counsel shall notify Escala's transfer agent of the number of shares of Escala Common Stock to

---

[1] On October 31, 2008, Escala common stock closed at $2.35 per share giving the settlement a value then of $19,400,000, plus interest.

be distributed for the distribution and the number of shares to be distributed to each person or entity based on a total distribution for the distributions of 4 million shares. ("Notification Shares"). If the Average Closing Price per share, as defined in the Settlement Agreement, for a particular valuation period is less than $2 per share, Escala shall issue an additional number of shares for the distribution so that the value of the distribution is equivalent to the number of Notification Shares times $2 per share. The "Average Closing Price" for a valuation period shall mean, with respect to a Notification Date, the average of the last daily sales prices of Escala Common Stock as reported in the Pink Sheets electronic quotation system (or, if the shares of Escala Common Stock are then quoted on a stock exchange, then the average closing price on such exchange) for the 10 trading days ending at the close of trading on the day immediately prior to the Notification Date.

Lead Plaintiff and Lead Counsel believe that the settlement is fair, reasonable, and adequate, and in the best interests of the Class. There is a serious issue whether Escala could pay a significant judgment if this case went to trial. As discussed in the Kaplan Declaration, prior to agreeing to a settlement, Lead Counsel, among other things, met with representatives of Escala in order to discuss Escala's financial condition. In September 2007, Escala provided Lead Counsel with certain unaudited financial statement and supplemental cash information was provided in September 2008 to Lead Counsel's investment consultant. Kaplan Decl. ¶6. The information provided was analyzed by or with the assistance of an investment banking consultant, Mr. Lamle. *Id.* Moreover, as discussed hereafter, the Company's corporate affiliates Afinsa and Auctentia are in bankruptcy proceedings in Spain. *Id.* ¶¶45-48. Escala had limited insurance. *Id.* ¶6. Substantially all of the cash component of the settlement is being paid by Escala's and AP&M's insurers. *Id.*

3

As set forth in the Affidavit of Peter M. Craig, dated October 29, 2008 (Ex. 1 to the Kaplan Decl., 11,371 Notices of Pendency and Proposed Settlement of Class Action ("Notice of Settlement") and Proof of Claim and Release ("Proof of Claim") forms have been disseminated. Furthermore, as set forth in the Affidavit of Erin Ostenson, sworn to on October 8, 2008, Kaplan Decl. Ex. 2, notice of the settlement was published in the national edition of the *Wall Street Journal* on October 8, 2008. The dates to object to the settlement and to opt-out of the settlement are November 11 and 13, 2008 respectively. To date, Lead Counsel is unaware of any objections or requests to opt-out.

For the reasons set forth herein and in the accompanying Kaplan Declaration, Lead Plaintiff respectfully requests that the Court (1) enter the proposed Judgment and Order of Dismissal, in the form submitted herewith, and (2) enter the proposed Order Approving Plan of Allocation, in the form submitted herewith.

## FACTUAL BACKGROUND

Lead Plaintiff respectfully refers the Court to the Kaplan Declaration submitted herewith for a full discussion of the history of the litigation, Lead Counsel's efforts in prosecuting this case and the proposed Plan of Allocation.

## ARGUMENT

I. **THE SETTLEMENT IS PROCEDURALLY AND SUBSTANTIVELY FAIR, ADEQUATE AND REASONABLE AND SHOULD BE APPROVED**

A. **Under Prevailing Law, Class Action Settlements Should Be Approved If They Are Fair, Adequate and Reasonable**

A settlement of claims brought by a certified class is subject to approval by the Court after reasonable notice and a hearing. Fed. R. Civ. P. 23(e)(1)-(2). A settlement will be approved

4

if it is "fair, adequate, and reasonable, and not a product of collusion." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 395 F.3d 96, 116 (2d Cir. 2005) (internal quotation marks omitted).

This determination falls within a court's sound discretion. *See Joel A. v. Giuliani*, 218 F.3d 132, 139 (2d Cir. 2000); *In re Visa Check/Master Money Antitrust Litig.*, 297 F. Supp. 2d 503, 509 (E.D.N.Y. 2003). In exercising such discretion, a court should be mindful of the "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart*, 396 F.3d at 116 (quoting *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998) (hereinafter "*PaineWebber II*")) (internal quotation marks omitted); *see also Taft v. Ackermans*, No. 02 Civ 7951, 2007 WL 414493, at *4 (S.D.N.Y. Jan. 31, 2007); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 455 (S.D.N.Y. 2004) (Lynch, J.) ("[F]ederal courts favor settlement, especially in complex and large-scale disputes, so as to encourage compromise and conserve judicial and private resources. Accordingly, this Court will take into consideration such public policy concerns in exercising its discretion.") (citations omitted); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) ("[T]here is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions.") (citations omitted).

A court determines the fairness of a settlement by looking both at the terms of the settlement and the negotiation process leading up to it. *See Wal-Mart*, 396 F.3d at 116 (citing *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001)). With respect to process, a class action settlement enjoys a strong "presumption of fairness" where it is the product of arm's-length negotiations conducted by experienced, capable counsel after meaningful discovery. *Id.*; *see also Global Crossing*, 225 F.R.D. at 461.

With respect to the substantive terms of a settlement, the standards governing approval are well-established. Courts in this Circuit examine the fairness, adequacy and reasonableness of a class action settlement utilizing the "*Grinnell* factors," to the extent they are applicable:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Wal-Mart*, 396 F.3d at 117 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res. Inc.*, 209 F.3d 43 (2d Cir. 2000)); *Levy ex rel. Mktg. Servs. Group, Inc. v. GE Capital Corp.*, No. 99 Civ. 10560, 2001 WL 989873, at *6 (S.D.N.Y. Aug. 31, 2001) (Hellerstein, J.).

"In finding that a settlement is fair, not every factor must weigh in favor of the settlement, but 'rather the court should consider the totality of these factors in light of the particular circumstances.'" *Global Crossing*, 225 F.R.D. at 456 (quoting *Thompson v. Metro. Life Ins. Co.*, 216 .F.R.D. 55, 61 (S.D.N.Y. 2003)).

Moreover, in applying the *Grinnell* factors, a court should not substitute its judgment for those of the parties who negotiated the settlement, or conduct a "mini-trial" of the merits of the action. *See Carson v. American Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981) ("Courts judge the fairness of a proposed compromise by weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement. They do not decide the merits of the case or resolve unsettled legal questions." (internal citations omitted)); *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982). "[T]he essence of a settlement agreement is compromise . . ., 'a yielding of absolutes and an abandoning of highest hopes.'" *United States v.*

6

*New York City Bd. of Educ.*, 85 F. Supp. 2d 130, 157 (E.D.N.Y. 2000) (quoting *Milstein v.*

*Werner*, 57 F.R.D. 515, 524-25 (S.D.N.Y. 1972), *vacated on other grounds by Brennan v. New*

*York City Bd. Of Educ.*, 260 F.3d 123 (2d Cir. 2001)). As such, a court must assess the settlement

as presented, "without modifying its terms, and without substituting its 'business judgment for

that of counsel, absent evidence of fraud or overreaching.'" *Global Crossing*, 225 F.R.D. at 455

(internal citations omitted).

      Lead Plaintiff submits that the proposed settlement is procedurally and substantively fair,

reasonable and adequate when measured under the relevant criteria. All parties have thoroughly

weighed the strengths and weaknesses of the claims and defenses and, after extensive

negotiations facilitated by an independent and experienced mediator, have reached an informed

and carefully crafted compromise, which should be approved by this Court.

     **B.**     **The Settlement Is Procedurally Fair Because It Is the Product of Arm's-Length Negotiations Among Experienced Counsel**

      As noted above, a strong presumption of fairness attaches to a class action settlement

reached in arm's-length negotiations among able counsel. *See Wal-Mart*, 396 F.3d at 116; David

F. Herr, *Manual for Complex Litigation* §30.42 (3d. ed. 1995) (explaining that a proposed

settlement is presumptively fair where the "class settlement [was] reached in arm's-length

negotiations between experienced, capable counsel").

      This settlement should undoubtedly be accorded a presumption of fairness. As set forth in

greater detail in the Kaplan Declaration ¶¶52-58, the Settlement Agreement was entered into by

the parties in good faith, at arm's-length, and without a trace of collusion, following two days of

mediation presided over by Judge Daniel Weinstein, a highly experienced mediator of complex

litigations. Moreover, it was not reached until after Lead Counsel had obtained a thorough

understanding of the strengths and weaknesses of Lead Plaintiff's claims by virtue of an analysis

of over 1.1 million pages of documents and other discovery, interviews with over 40 informants,

motion practice over Defendants' motions to dismiss, Lead Plaintiff's motion for class

certification[2], and the exchange of the respective mediation statements submitted by each of the

parties to Judge Weinstein. Kaplan Decl. ¶¶20-26, 28-31, 33, 35-36, 49-50, 56.

In the mediation, Lead Counsel learned that, while a viable company, Escala did not have

substantial resources to pay a substantial settlement. Kaplan Decl. ¶58. The Company was

restructuring its business, which included, among other things, the closing and sale of principal

executive offices in New Jersey. *Id.* Lead Counsel and Escala discussed other forms of

consideration available, including Escala common stock. *Id.* Furthermore, while Escala had $20

million of directors' and officers' insurance, $15 million of the insurance was not applicable

because it specifically excluded the claims in this litigation. *Id.* That left only $5 million of

insurance, which was arguably applicable and that carrier was threatening to disclaim coverage

because of alleged intentional wrongdoing by defendant Manning. *Id.*

Judge Weinstein's active supervision and facilitation of the settlement negotiations

strongly supports a presumption that the Settlement is fair. *See Becher v. Long Island Lighting*

*Co.*, 64 F. Supp. 2d 174, 181 (E.D.N.Y. 1999) (approving settlement facilitated by an "arms

length negotiations before a respected neutral mediator"); *In re Initial Pub. Offering Sec. Litig.*,

226 F.R.D. 186, 194, 194 n.42 (S.D.N.Y. 2005) (finding settlement was "clearly the result of

arm's-length bargaining" where negotiations were facilitated by a former judge).

All parties were represented throughout the settlement negotiations by able counsel

experienced in class action and securities litigation, which also confirms that the settlement was

procedurally fair. *See Global Crossing*, 225 F.R.D. at 461 ("Both sides have been represented

---

[2]     Lead Plaintiff's motion for class certification was pending when the parties agreed to settle this
action.

well . . . . Counsel for plaintiffs [and] the Settling Defendants . . . possessed the requisite expertise to negotiate a fair settlement."). Lead Plaintiff is represented by Kaplan Fox, and the Defendants are represented by respected law firms in the defense bar, including Kramer Levin Naftalis & Frankel LLP, Goodwin Procter LLP, and Lovells LLP.

Moreover, "'great weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) (hereinafter "*PaineWebber I*"), *aff'd*, 117 F.3d 721 (2d Cir. 1997); *see also Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 366 (S.D.N.Y. 2002).

Here, Lead Counsel believes that this Settlement is an excellent result and in the best interests of the class. In reaching this conclusion, Lead Counsel considered the strength of Lead Plaintiff's claims, the risks of establishing liability and damages, as well as the risks that, if the case proceeds to trial, a jury may rule in favor of Defendants on some or all of the major issues resulting in a lesser or no recovery for the Class, or in the alternative, that even if the jury finds in favor of Lead Plaintiff, Escala would be unable to pay a substantial judgment and now-available insurance funds would have been dissipated. Therefore, the Court should accord a strong presumption of procedural fairness to the Settlement in considering the substantive *Grinnell* factors discussed below.

**C.    The Settlement is Substantively Fair, Adequate and Reasonable According to the *Grinnell* Factors**

**1.    The Complexity, Expense and Duration of This Litigation Warrant Approval of the Settlement**

This was a difficult and complex litigation that was vigorously prosecuted and defended. Without the Settlement, the prosecution of this Action would require additional large

expenditures over an extended period, after which the Class could obtain a result far less

beneficial than the one provided by the Settlement. *See In re Prudential Inc. Co. Am. Sales*

*Practices Litig.*, 148 F.3d 283, 318 (3d Cir. 1998) (settlement favored where "trial of this class

action would be a long, arduous process requiring great expenditures of time and money on

behalf of both the parties and the court").

Lead Counsel has already expended substantial amounts of time and money to reach the

point of settlement and further significant time and expenses would be incurred to complete

discovery and other pre-trial proceedings and conduct a trial. Kaplan Decl. Exhibits 4-6. As

Defendants did at the motion to dismiss stage of this Action (Kaplan Declaration ¶¶20-26),

Defendants would have raised issues concerning falsity, scienter, and loss causation at the

summary judgment stage and at trial. Moreover, if the litigation continued, there likely would

have been discovery in Barcelona, Madrid and London, substantially adding to the cost and

expense of the litigation. Further, the current trend in securities class actions has been for

Defendants to contest class certification where there are issues involving loss causation and

damages, requiring expert testimony. The settlement avoids all of these complex issues, as well

as conserving the judicial resources necessary to resolve discovery disputes that would

undoubtedly arise, an expected motion by Defendants for summary judgment, and a potential

trial of this Action.

Furthermore, at any trial of this Action, a favorable outcome against Defendants is far

from assured, and a judgment favorable to Lead Plaintiff would, in light of the contested nature

of the case, unquestionably be the subject of post-trial motions and appeals. Such appeals would

substantially delay any payment to Class members, even if Lead Plaintiff prevails at trial.

10

Furthermore, continued litigation would reduce both Escala's limited resources and the limited insurance coverage available to pay a settlement or a judgment. Kaplan Decl. ¶58.

By contrast, the settlement offers the opportunity to provide definite, available consideration to the Class now without incurring additional expenses. *See Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) (Holwell, J.) ("Further litigation would necessarily involve further costs [and] justice may be best served with a fair settlement as opposed to an uncertain future settlement or trial of the action."); *Klein ex rel. IRA v. PDG Remediation, Inc.*, No. 95 Civ. 4954 (DAB), 1999 WL 38179, at *2 (S.D.N.Y. Jan. 28, 1999) (Batts, J.) (complexity, expense and duration of litigation favored settlement that "offer[ed] Class members the benefit of immediate recovery as opposed to an uncertain award several years from now"). The Settlement should be approved because it secures a substantial recovery for the Class undiminished by further expenses and without the delays, risks, and uncertainties of continued litigation.

## 2. The Lack of Objections to the Settlement and the Absence of Opt-Outs Support Final Approval

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy. In fact, the lack of objections may well evidence the fairness of the Settlement." *Maley*, 186 F. Supp. 2d at 362 (internal citations omitted).

Starting on September 29, 2008, 11,371 copies of the Notice were mailed directly to brokers and prospective members of the Class and the Summary Notice was published in the *Wall Street Journal* on October 8, 2008. Kaplan Decl. ¶7. The Notice provided that the deadline for objecting to the settlement is November 11, 2008, and the deadline to opt-out of the Action is November 13, 2008. *Id.* Despite the wide dissemination of the Notice, to date there have been

11

no objections to the proposed settlement and no Class members have opted out. *Id.*; *see also*

*RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, No. 94 Civ. 5587, 2003 WL 21136726, at *1

(S.D.N.Y. May 15, 2003) ("[T]he absence of objectants may itself be taken as evidencing the

fairness of a settlement." (citing *Ross v. A.H. Robins Co.*, 700 F. Supp. 682, 684 (S.D.N.Y.

1988)); *see also Grinnell*, 495 F.2d at 462 (noting that the fact that only 20 objectors appeared

from a group of 14,156 claimants is strong evidence that the court properly approved the

settlement); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 478-79 (S.D.N.Y.

1998) (approving settlement where "miniscule" percentage of the class objected).

The overwhelmingly positive reaction, to date, of the Class to the Settlement strongly

favors its approval by the Court.

### 3. The Stage of the Proceedings at Which the Case Settled Allowed Lead Plaintiff to Make Informed Decisions as to the Settlement

The third *Grinnell* factor focuses on whether the parties had sufficient information to

make informed decisions with respect to settlement. *See Global Crossing*, 225 F.R.D. at 458.

"The relevant inquiry for this factor is whether the plaintiffs have obtained a sufficient

understanding of the case to gauge the strengths and weaknesses of their claims and the

adequacy of the settlement." *In re AOL Time Warner, Inc. Sec. and ERISA Litig.*, No. MDL

1500, 02 Civ. 5575, 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006) (hereinafter "*AOL*").

Here, Lead Plaintiff agreed to mediate, and later entered into the Settlement, only after

developing a thorough understanding of the strengths and weaknesses of the claims asserted in

the Action.

As detailed in the Kaplan Declaration, Lead Counsel received and reviewed over 1.1

million pages of documents produced by Defendants and nonparties. Further, Lead Counsel

interviewed dozens of informants, including numerous former Escala employees.  Kaplan Decl.

¶¶33-36. Lead Plaintiff's understanding of its claims was further informed by the briefing on Defendants' motions to dismiss and on Lead Plaintiff's motion for class certification, as well as the exchange of mediation memoranda submitted to Judge Weinstein, and the mediation itself. Kaplan Decl. ¶¶20-26, 49-50, 52-58. Accordingly, Lead Plaintiff had a sufficient understanding of the merits of its claims to warrant approval of the Settlement. *See Global Crossing*, 225 F.R.D. at 458 (noting that plaintiffs "had the requisite information to make informed decisions about the relative benefits of litigating or settling" where they reviewed documents concurrently with settlement discussions); *RMED Int'l*, 2003 WL 21136736, at * 1 ("Considering the stage of the proceedings, both sides and the Court are well apprised of the facts and the law involved and therefore are able to make an intelligent decision about the settlement value."); *Weil v. Long Island Sav. Bank*, 188 F. Supp. 2d 258, 263-64 (E.D.N.Y. 2002) (finding that settlement is appropriate where plaintiffs are in a position to make "an educated evaluation of the relative strengths and weaknesses of the parties' cases"). Thus, given the stage of the proceedings at which this case has settled and the amount of investigation and discovery conducted by Lead Counsel, this factor weighs in favor of approval of the settlement.

### 4.     Lead Plaintiff Faced Significant Risks in Establishing Liability

In analyzing the risks of establishing liability, the Court does not "adjudicate the disputed issues or decide unsettled questions; rather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement. Courts approve settlements where plaintiffs would have faced significant legal and factual obstacles to proving their case." *See Global Crossing*, 225 F.R.D. at 459 (internal citations omitted). [3]

---

[3]     Numerous cases continue to demonstrate the enormous risks associated with prosecuting securities class actions. Recently, a jury verdict for the plaintiffs was overturned by the court on loss causation grounds in *In re Apollo Group, Inc. Sec. Litig.*, No. CV 04-2147-PHX-JAT, 2008 WL 3072731 (D. Ariz. Aug. 4, 2008). *See also, e.g., AUSA Life Ins. Co. v. Ernst & Young*, No. 00-9472, 2002 WL

"The difficulty of establishing liability is a common risk of securities litigation." *AOL*, 2006 WL 903236 at *11; *see also Maley*, 186 F. Supp. 2d at 364. Lead Plaintiff believes that based on the evidence collected through its investigation and through the discovery to date (Kaplan Declaration ¶¶33-36), that it would be able to establish liability as to all Defendants. However, had this case not settled, Defendants would have continued to deny liability under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") at trial or on summary judgment. Defendants have denied (Kaplan Declaration ¶¶20-26) and continue to deny each and all of the claims and contentions alleged by Lead Plaintiff. Defendants assert that they fully disclosed their true opinions about Escala and made no misrepresentations of material facts.

Lead Plaintiff would face additional risks in proving control person liability under Section 20(a) of the Exchange Act and may have to prove culpable participation on behalf of the controlling defendants. *See In re Parmalat Sec. Litig.*, 375 F. Supp. 2d 278, 307-10 (S.D.N.Y. 2005) (noting intra-Circuit split and finding that the Second Circuit has not held that a Section 20(a) claim is insufficient absent an allegation of culpable participation); *but see Lapin v. Goldman Sachs Group, Inc.*, 506 F. Supp. 2d 221, 247-248 (S.D.N.Y. 2006) (noting intra-Circuit split and finding that a Section 20(a) claim does require a showing of culpable conduct). Defendants deny that they have violated the securities laws, or engaged in any culpable conduct.

Given the uncertain prospects of success at trial, and on any appeal, settlement at this time - after over two and one-half years of litigation - is highly beneficial to the Class. The Settlement will provide tangible and certain relief to the Class now, and "without subjecting them to the risks, complexity, duration and expense of continuing litigation." *Global Crossing*,

---

1467546 (2d Cir. July 8, 2002) (affirming district court's dismissal after a full bench trial); *Winkler v. NRD Mining, Ltd.*, 198 F.R.D. 355 (E.D.N.Y. Mar. 31, 2000) (granting defendants' motion for judgment as a matter of law after jury verdict for plaintiffs); *Robbins v. Koger Props, Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury damages award of over $81 million for plaintiffs reversed on appeal for failure to prove loss causation).

225 F.R.D. at 456-57; *see Maley*, 186 F. Supp. 2d at 362 ("Settlement at this juncture results in a substantial and tangible present recovery, without the attendant risk and delay of trial. These factors weigh in favor of the proposed Settlement.").

### 5.    Lead Plaintiff Faced Risks in Establishing Damages

Lead Plaintiff believes that it will establish damages. As a result of the disclosures on May 9, 2008, Escala shares declined from $32 per share at the close of trading on May 8, 2006, to close at $12.23 at the close of trading on May 9, 2006, a decline of $19.77 per share. Kaplan Decl. ¶9. Nevertheless, Lead Plaintiff faced substantial risks in proving damages. "In a Section 10(b) action, the range of damages is the 'out of pocket' damages measure, *i.e.*, 'the difference between the purchase price and the value of the stock [*i.e.*, value absent the fraud] at the date of purchase.' The determination of damages . . . is a complicated and uncertain process, typically involving conflicting expert opinions." *Maley*, 186 F. Supp. 2d at 365. Almost invariably, the damages issue would be reduced to a "battle of the experts," which could lead the jury to minimize or eliminate the Class's proffered losses. *See id.* ("Conceivably, a jury could find that damages were only a fraction of the amount that plaintiffs contend. A jury could be swayed by experts for the Defendants, who would minimize the amount of Plaintiffs' losses."); *PaineWebber I*, 171 F.R.D. at 129 (noting unpredictability of outcome of a battle of damage experts); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y 1985). There can be no doubt that Defendants would have presented expert testimony at the class certification stage, at summary judgment and at trial that Lead Plaintiff and the Class, even assuming liability was proven, suffered little or no recoverable damages. Specifically, relying on the Supreme Court's decision in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), Defendants could be expected to have presented expert testimony supporting their position that the May 9,

15

2006 press releases and the articles did not disclose the fraud alleged, and, therefore, Lead

Plaintiff and the Class could not prove damages.

### 6. The Risks of Maintaining the Class Action Through Trial Weigh in Favor of Approval

Lead Plaintiff has moved for class certification and believes that a class would be

certified by the Court under applicable Second Circuit law. *See In re Initial Public Offerings Sec.

Litig.*, 471 F.3d 24, 27 (2d Cir. 2006). At the time the parties signed the Settlement Agreement,

Lead Plaintiff's motion for class certification was pending and Defendants had not filed any

opposition to the motion. If this Settlement is not approved and the parties proceed with

litigation, Defendants are likely to contest class certification, which creates "appreciable risk to

the class members' potential for recovery." *Global Crossing*, 225 F.R.D. at 460. Even if the

class is certified in the absence of Settlement approval, a class certification order may be altered

or amended any time before a decision on the merits. *See* Fed. R. Civ. P. 23(c)(1). Accordingly,

even after initial class certification, there remains a risk of decertification of the class. *See

Global Crossing*, 225 F.R.D. at 460; *NASDAQ Market-Makers*, 187 F.R.D. at 476. "[I]f the

Class were to be decertified at trial, or if class certification were to be reversed on appeal, the

class members (other than [individual] plaintiffs) would recover nothing at all." *NASDAQ

Market-Makers*, 187 F.R.D. at 477. This factor also weighs in favor of approving the Settlement.

### 7. The Settlement is Reasonable in Light of the Ability of Defendants to Withstand a Judgment

"This factor typically weighs in favor of settlement where a greater judgment would put

the defendant at risk of bankruptcy or other severe economic hardship." *AOL*, 2006 WL 903236

at *12. There is a serious issue whether Escala could pay a significant judgment if this case went

to trial. Kaplan Decl. ¶6. Prior to agreeing to a settlement, Lead Counsel, among other things,

met with representatives of Escala in order to discuss Escala's financial condition. *Id.* In

September 2007, Escala provided Lead Counsel with certain unaudited financial statements, and supplemental cash information was provided to Lead Counsel's investment banking consultant in September 2008. *Id.* The information provided was analyzed with the assistance of Lead Plaintiff's investment banking consultant. *Id.* Moreover, the Company's corporate affiliates Afinsa and Auctentia are in bankruptcy proceedings in Spain. *Id.* Escala had very limited applicable insurance. *Id.* Substantially all of the cash component of the settlement is being paid by Escala's and AP&M's insurers. *Id.* If this action were to continue, the available insurance would be paid to Defendants' counsel and may not be available to pay a settlement or satisfy a judgment.

### 8.    The Settlement Amount is Reasonable in View of the Best Possible Recovery and the Myriad Risks in this Litigation

The Settlement amount of at least $18 million in cash and stock falls safely within a range of reasonableness in view of the best possible recovery and all the attendant risks of litigation. *See Wal-Mart*, 396 F.3d at 119 ("There is a range of reasonableness with respect to a settlement - a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion . . . .") (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

In order to calculate the "best possible" recovery, the Court must assume complete victory on both liability and damages.  Viewed in light of the significant risks of continued litigation discussed above and in the Kaplan Declaration, the settlement represents an excellent result for the Class. There is no certainty in litigation and few cases tried before a jury result in an award of the full amount of damages claimed. As the court aptly observed in *PaineWebber I*, "the settlement does not provide for a full recovery of legal damages; but that is the hallmark of compromise." 171 F.R.D. at 131; *see also Warner Commc'ns*, 618 F. Supp. at 745.  In sum, Lead

17

Plaintiff submits that the settlement is fair, adequate and reasonable in light of the best possible recovery and all of the risks of litigation, and should be approved.

## II.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE AND SHOULD BE APPROVED

"A plan of allocation is evaluated by the same standards applied to the settlement as a whole: fairness, reasonableness, and adequacy." *AOL*, 2006 WL 903236, at *17. "When formulated by competent and experienced counsel," a plan for allocation of net settlement proceeds "need only have a reasonable, rational basis." *Global Crossing*, 225 F.R.D. at 462 (citations and internal quotation marks omitted). "A reasonable plan may consider the relative strength and values of different categories of claims." *Id.*; *see also In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 596 (S.D.N.Y. 1992) (finding that a plan of allocation that distributes greater part of settlement proceeds to those most injured is reasonable).

Lead Plaintiff respectfully submits that the Plan of Allocation for the Net Settlement Amount should also be approved as it provides a fair and equitable method of dividing the Net Settlement Amount among Class members who submit timely and valid Proof of Claim forms, consistent with governing law. As clearly set forth in the Notice, at ¶¶62-66, Class members were informed that they had an opportunity to object to the Plan of Allocation no later than November 11, 2008. To date, Lead Plaintiff is unaware of any such objections. Kaplan Decl. ¶ 80.

The Plan of Allocation provides:

> a. No claim will be recognized for any shares of Escala Common Stock purchased between September 5, 2003 and May 8, 2006 which were not owned as of the close of trading on May 8, 2006.

> b. For Escala Common Stock purchased between September 5, 2003 and May 8, 2006 and sold between May 9, 2006 and August 4, 2006, an Authorized Claimant's Recognized Loss shall be the lesser of: (i) the

difference, if a loss, between the purchase price and the PSLRA 90-day average price on the date of sale; (ii) the difference, if a loss, between the purchase price and the actual sales price on the date of sale; or (iii) $19.84 per share.

c. For Escala Common Stock purchased between September 5, 2003 and May 8, 2006 and owned as of the close of trading on August 4, 2006, an Authorized Claimant's Recognized Loss shall be the lesser of: (i) the difference, if a loss, between the purchase price and $6.04; or (ii) $19.84 per share.

The Plan of Allocation is predicated on: (1) the Supreme Court's decision in *Dura Pharmaceuticals* and its progeny; and (2) the specific timing of announcements on May 9, 2006. In addition, it was developed with the assistance of Lead Plaintiff's damage experts, Financial Markets Analysis, LLC ("FMA"). Kaplan Decl. ¶96. In *Dura Pharmaceuticals*, the Supreme Court held that to recover damages, a plaintiff must show a connection between the alleged misrepresentations and the loss. 544 U.S. at 346. *Id.* Here, in consultations with FMA, Lead Plaintiff has determined that there were public disclosures on May 9, 2006 concerning the alleged fraud giving rise to recoverable damages. *Id.*

As is explained in the Notice, it was publicly disclosed on May 9, 2006 that the Spanish police had arrested approximately 8 people and raided the offices of two leading stamp collection companies (including Afinsa, Escala's parent company) as part of a probe into an alleged stamp investment fraud that was thought to affect as many as 200,000 small investors in Spain. Later on May 9, 2006, Escala publicly reported that it had been advised that Spanish judicial authorities, as an extension of the process of investigating Afinsa, requested documents from Escala's Madrid office. Based on these disclosures, Escala shares declined from $32 per share at the close of trading on May 8, 2006, to close at $12.23 at the close of trading on May 9, 2006, a decline of $19.77 per share. Kaplan Decl. ¶9.

The Plan of Allocation only provides for a recovery of losses due to these announcements. As a result, only Authorized Claimants who held Escala shares through May 8, 2006, may share in the Net Settlement Amount. This is reflected in paragraphs (b) and (c) of the Plan of Allocation. Furthermore, to avoid any windfall on shares purchased during the Class Period and sold before the May 9, 2006 disclosure, the Plan of Allocation provides no recovery on such shares. This is reflected in paragraph (a) of the Plan of Allocation.

The Plan of Allocation also takes into account the limitation on damages provided by Section 21D(e) of the Exchange Act, 15 U.S.C. §78u-4(e), which, as applied here, generally limits the Recognized Loss on shares purchased during the Class Period to the difference between the purchase price of the shares and the mean trading price during the 90-day period after the end of the Class Period. Accordingly, paragraphs (b) and (c) of the Plan of Allocation, both of which involve shares held through the end of the Class Period, include this limitation.

Under the Plan of Allocation, each Authorized Claimant's Recognized Loss is equal to the resulting damages on all eligible shares. Each Authorized Claimant is entitled to recover his/her/its Recognized Loss to the extent that the Net Settlement Amount is sufficient. If there are no sufficient funds, each Authorized Claimant will be entitled to receive the same percentage of his/her/its Recognized Loss, determined by the ratio of the total Recognized Losses of all Authorized claimants to the value of the Net Settlement Amount. The Plan of Allocation is similar in structure to numerous other such plans, which have been utilized in other similar securities class action cases and approved by Courts. Kaplan Decl. ¶ 97.

Therefore, the Plan of Allocation is fair, reasonable and adequate and represents an equitable method for allocating the Net Settlement Amount among Authorized Claimants and should be given final approval by the Court.

## Conclusion

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court (1) enter the proposed Judgment and Order of Dismissal in the form submitted herewith, and (2) enter the proposed Order Approving Plan of Allocation, in the form submitted herewith.

Dated: November 3, 2008

Respectfully submitted,

**KAPLAN FOX & KILSHEIMER LLP**

By: _____

Robert N. Kaplan
Donald R. Hall
Jeffrey P. Campisi
850 Third Avenue, 14th Floor
New York, NY 10022
Tel:    (212) 687-1980
Fax:    (212) 687-7714

***Lead Counsel for Lead Plaintiff the Virginia
Retirement System and the Settlement Class***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 3, 2008, I electronically filed the foregoing paper with the Clerk of the Court using the ECF System which will electronically send notification of such filing to the registered participants and paper copies will be sent via first-class mail postage pre-paid to those indicated as non-registered participants on November 3, 2008.

/s/ Robert N. Kaplan
Robert N. Kaplan

November 3, 2008